ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/19

UNITED STATES OF AMERICA

- v. -

REGINALD FOWLER,

Defendant.

SEALED INDICTMENT

19 Cr. 19 CRIM 254

**COUNT ONE**
(Conspiracy to Commit Bank Fraud)

The Grand Jury charges:

Overview of the Scheme

1. From as early as February 2018 up until in or about October 2018, REGINALD FOWLER, the defendant, and others, participated in a coordinated scheme to operate an unlicensed money transmitting business ("MSB") as part of a business engaged in the exchange of crypto- and fiat currencies and, in so doing, to lie to various banks at which that MSB secretly operated (the "Cryptocurrency Scheme").

2. Cryptocurrency, or "virtual currency," is a digital representation of value that can be digitally traded and functions as (i) a medium of exchange, (ii) a unit of account, and/or (iii) a store of value, but does not have legal tender status. Unlike so-called "fiat currency," which is currency

JUDGE CARTER

like the U.S. dollar that a government has declared to be legal tender but is not backed by a physical commodity, cryptocurrency is not issued by any jurisdiction and functions only by agreement within the community of users of that particular currency. Bitcoin, which users store in digital "wallets" identified by unique electronic "addresses," is an example of a cryptocurrency.

3. The Cryptocurrency Scheme involved a parent company ("Company-1") and a subsidiary company ("Company-2" and, together with Company-1, the "Crypto Companies") offering cryptocurrency-related services. In particular, Company-2 publicly marketed its ability (i) to receive deposits from individuals who were buying cryptocurrency with fiat currency; and (ii) to send money to individuals who were exchanging cryptocurrency for fiat currency. Company-2's website (the "Website") stated that users of Company-2 could "deposit and withdraw fiat funds instantly to any crypto exchange around the world." A "crypto exchange" is a platform where individuals can buy and sell cryptocurrency.

4. As of October 3, 2018, the Website stated the following under the heading "Exchange Platforms": "[Company-2] handles all KYC ["Know Your Customer"]/AML ["Anti-Money Laundering"]/SAR ["Suspicious Activity Report"] verification requirements and is licensed to handle customer's funds. All you

need to do is do what you do best, provide the best software platform to exchange Crypto to Fiat and vice versa." The Website noted that Company-2 is owned and operated by Company-1.

5. As of October 3, 2018, the Website also listed numerous crypto exchanges that partnered with Company-2, including a particular exchange platform ("Exchange-1").

6. In order to facilitate the exchange of cryptocurrency and fiat currency, REGINALD FOWLER, the defendant, and others, opened and assisted in opening bank accounts on behalf of Company-1 in the United States and abroad (the "Accounts"). FOWLER and others used the Accounts (i) to receive deposits from the Crypto Companies' clients who were buying cryptocurrency with fiat currency; and (ii) to send money to the Crypto Companies' clients who were exchanging cryptocurrency for fiat currency. Hundreds of millions of dollars passed through the Accounts during the course of the Cryptocurrency Scheme.

7. When opening the Accounts, REGINALD FOWLER, the defendant, and others misrepresented the nature of the Crypto Companies' business to banks, falsely stating that the Accounts would be used for other purposes, including real estate investments, and omitting to notify the banks that the Accounts would be used to send and receive deposits on behalf of cryptocurrency exchanges.

8. For example, in or about February 2018, REGINALD

FOWLER, the defendant, formed a limited liability corporation with a name that matched Company-1 ("LLC-1"). In or about August 2018, FOWLER opened a bank account in the name of LLC-1 ("Bank Account-1") with an FDIC-insured bank located in Manhattan, New York ("Bank-1"). In the course of his communications with Bank-1 employees, FOWLER stated, in substance and in part, that LLC-1 was a real estate company that had already developed multiple properties. FOWLER further stated that Bank Account-1 would primarily be used to collect rental or sale proceeds from these properties, and to then use those proceeds to invest in other real estate projects.

9. In truth and in fact, and as REGINALD FOWLER, the defendant, well knew, these misrepresentations were inconsistent with the actual use of Bank Account-1. Records for Bank Account-1 indicate that Bank Account-1 was used in furtherance of the Cryptocurrency Scheme. Between on or about August 31, 2018 and October 5, 2018, Bank Account-1 received approximately 77 incoming wires totaling approximately $9,685,249.95. The wires were transmitted from accounts held by various individuals and entities at banks across the world, including Hong Kong, Germany, Australia, Turkey, the United Arab Emirates, and New York, New York. Some of these wire transfers included a description or note regarding the nature of the transfer in the "Originator to Beneficiary Information" ("OBI") line, akin to

the memo line on a check. The OBI lines for the incoming wire transfers did not reference real estate transactions. At least one of the incoming wires to Bank Account-1 referenced Exchange-1. In or about October, 2018, public reporting indicated that Exchange-1 was using Bank Account-1 to process cryptocurrency transactions.

10. Additionally, between on or about September 6, 2018 and October 5, 2018, Bank Account-1 sent approximately 19 outgoing wires totaling approximately $2,334,068.95. The wires were transmitted to accounts held by various individuals and companies at banks across the world, including Hong Kong, Australia, Taiwan, and Canada. Transfers to and from Bank Account-1 involved other companies and foreign bank accounts with names virtually identical to Company-1.

11. In furtherance of the Cryptocurrency Scheme, REGINALD FOWLER, the defendant, and others would at times include false information in the OBI lines in outgoing wires. For example, many of the outgoing wires from the Accounts were identified as payments for real estate investments. In email communications, FOWLER and others discussed these misrepresentations to banks regarding the nature of the Crypto Companies' business. For example, on one occasion, when a bank asked for additional information about a real estate investment referenced in the OBI line, FOWLER and others discussed amending the OBI line to avoid

providing additional information to the bank.

12. Title 31, United States Code, section 5330(a)(1) provides that "[a]ny person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury[.]"  Section 5330(d)(1), in turn, explains, in part, that the "term 'money transmitting business' means . . . (A) any . . . person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system; (B) is required to file reports under section 5313; and (C) is not a depository institution (as defined in section 5313(g)."

13. Title 31, United States Code, Section 5313(a) provides that "[w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the

Secretary prescribes." The term "financial institution" is defined in 31 U.S.C. § 5312(a)(2)(R) as "a licensed sender of money or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system."

14. Under the statutory scheme described above, the Secretary of the Treasury is given the authority to establish which individuals and entities are subject to 31 U.S.C. 5330's registration requirement. 31 U.S.C. §§ 5313(a); 5330(a)(2) & (c)(1). These regulations are contained in the Code of Federal Regulations ("CFR"). In particular, 31 C.F.R. § 1022.380(a)(1) provides that "each money services business (whether or not licensed as a money services business by any State) must register with FinCEN [an agency within the U.S. Department of Treasury] . . . . as required by 31 U.S.C. 5330[.]" 31 C.F.R. § 1010.100(ff) includes a "money transmitter" as a "money services business." The term "money transmitter" is, in turn, defined by 31 C.F.R. § 1010.100(ff)(5) to include "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or

person by any means. 'Any means' includes, but is not limited to . . . an informal value transfer system; or . . . [a]ny other person engaged in the transfer of funds." Accordingly, the Treasury regulations establish that any person engaged in the transfer of funds is required to register with FinCEN.

15.  Financial institutions are required to conduct various monitoring and reporting activities, including the filing of currency transaction reports ("CTRs") and Suspicious Activity Reports ("SARs"). For instance, the filing of CTRs is mandated by 31 C.F.R. § 1010.311, which provides that "[e]ach financial institution . . . shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000." This regulation applies to money services businesses as defined above. 31 C.F.R. § 1022.310. Likewise, "[e]very money services business . . . shall file with the Treasury Department, to the extent and in the manner required by this section, a report of any suspicious transaction relevant to a possible violation of law or regulation," also known as SARs. 31 C.F.R. § 1022.320(a)(1). By failing to register with FinCEN, a money transmitting business prevents the Treasury from ensuring that the business is properly filing CTRs and SARs. This has the effect of allowing an unregistered money transmitting business to operate

as a shadow bank through which funds can pass without being subjected to the scrutiny that Congress has sought fit to impose upon the United States financial system.

16. REGINALD FOWLER, the defendant, opened over ten accounts in the United States in the name of LLC-1 (the "LLC-1 Accounts"). The LLC-1 Accounts were used in furtherance of the Cryptocurrency Scheme—that is, to facilitate the transfer of money (including fiat currency and cryptocurrency) domestically and internationally outside of the conventional financial institutions system. At no point have FOWLER, LLC-1, or the Crypto Companies been registered with the Secretary of the Treasury or FinCEN as a money transmitting business as set forth in the statutes and regulations described above.

Statutory Allegations

17. From at least in or about February 2018, up to and including in or about October 2018, in the Southern District of New York and elsewhere, REGINALD FOWLER, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to execute, and attempt to execute, a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title

18, United States Code, Section 1344, to wit, FOWLER opened numerous U.S.-based business bank accounts at several different banks, and in so doing FOWLER falsely represented to those banks that the accounts would be primarily used for real estate investment transactions even though FOWLER knew that the accounts would be used, and were in fact used, by FOWLER and others to transmit funds on behalf of an unlicensed money transmitting business related to the operation of cryptocurrency exchanges.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
(Bank Fraud)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 16 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

19. From at least in or about February 2018, up to and including in or about October 2018, in the Southern District of New York and elsewhere, REGINALD FOWLER, the defendant, and others known and unknown, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property

owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, FOWLER opened Bank Account-1 at Bank-1 in Manhattan, New York, and falsely represented to Bank-1 that this account would be primarily used for real estate investment transactions even though FOWLER knew that the account would be used, and was in fact used by FOWLER and others, to transmit funds on behalf of an unlicensed money transmitting business related to the operation of cryptocurrency exchanges.

(Title 18, United States Code, Sections 1344 & 2.)

**COUNT THREE**

(Conspiracy to Operate an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

20. The allegations contained in paragraphs 1 through 16 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

21. From in or about February 2018 up to and including in or about October 2018, in the Southern District of New York and elsewhere, REGINALD FOWLER, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, operation of an

unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

22. It was a part and object of the conspiracy that REGINALD FOWLER, the defendant, and others known and unknown, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1960.

Overt Act

23. In furtherance of the conspiracy, and to effect the illegal objects thereof, REGINALD FOWLER, the defendant, together with others known and unknown, committed the following overt act, in the Southern District of New York and elsewhere:

a. On or about August 8, 2018, FOWLER opened Bank Account-1 with Bank-1 in Manhattan, New York, for the purpose of conducting an unlicensed money transmitting business.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**

(Operation of an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 16 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

25. From at least in or about February 2018 up to and including in or about October 2018, in the Southern District of New York and elsewhere, REGINALD FOWLER, the defendant, and others known and unknown, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1960.

(Title 18, United States Code, Sections 1960 & 2.)

**FORFEITURE ALLEGATIONS**

26. As a result of committing the offenses charged in Counts One and Two of this Indictment, REGINALD FOWLER, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any and all property constituting or derived from, proceeds the defendant obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

a. Any and all funds seized on or about October 23, 2018 from HSBC Bank USA account 141000147, held by Global Trading Solutions LLC;

b. Any and all funds seized on or about October 23, 2018 from HSBC Bank USA account 697825922, held by Reginald D.

Fowler;

   c.   Any and all funds seized on or about October 23, 2018 from HSBC Securities USA account HMB861668, held by Reginald D. Fowler;

   d.   Any and all funds seized on or about November 16, 2018 from HSBC Securities USA/Pershing LLC account HMB861668, held by Reginald D. Fowler;

   e.   Any and all funds seized on or about November 16, 2018 from HSBC Securities USA/Pershing LLC account HMB878886, held by Global Trading Solutions LLC.

27.   As a result of committing the offenses alleged in Counts Three and Four of this Indictment, REGINALD FOWLER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses and the following specific property:

   a.   Any and all funds seized on or about October 23, 2018 from HSBC Bank USA account 141000147, held by Global Trading Solutions LLC;

   b.   Any and all funds seized on or about October 23, 2018 from HSBC Bank USA account 697825922, held by Reginald D. Fowler;

  c. Any and all funds seized on or about October 23, 2018 from HSBC Securities USA account HMB861668, held by Reginald D. Fowler;

d. Any and all funds seized on or about November 16, 2018 from HSBC Securities USA/Pershing LLC account HMB861668, held by Reginald D. Fowler;

e. Any and all funds seized on or about November 16, 2018 from HSBC Securities USA/Pershing LLC account HMB878886, held by Global Trading Solutions LLC.

**Substitute Asset Provision**

28. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

2 arrest warrants.
Sealed Indictment
Judge Netburn
4/11/19

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**REGINALD FOWLER,**

**Defendant.**

**INDICTMENT**

19 Cr.

(18 U.S.C. §§ 371, 1344, 1349, 1960, and 2)

GEOFFREY S. BERMAN
United States Attorney.

Foreperson