K1HHFOWC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          19 Cr. 254 (ALC)

5   REGINALD FOWLER,

6                                          Conference
                   Defendant.
7
    ------------------------------x
8
                                          New York, N.Y.
9                                         January 17, 2020
                                          2:20 p.m.
10

11  Before:

12               HON. ANDREW L. CARTER, JR.,

13                                         District Judge

14                        APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    SEBASTIAN SWETT
17  JESSICA FENDER
    SAMUEL ROTHSCHILD
18       Assistant United States Attorneys

19  HOGAN LOVELLS US LLP
         Attorneys for Defendant
20  BY:  JAMES McGOVERN
         SAMUEL RACKEAR
21       -and-
    ROSENBLUM SCHWARTZ & FRY P.C.
22  BY:  SCOTT ROSENBLUM

23  Also Present:  Todd McGee, FBI

24

25

K1HHFOWC

```
1        (Case called)

2        THE DEPUTY CLERK:  Counsel, please state your

3   appearance.  For the government?

4        MR. SWETT:  Good afternoon, your Honor.  Sheb Swett,

5   Jessica Fender, and Sam Rothschild for the United States.

6   We're joined at counsel table by Special Agent Todd McGee.

7        THE DEPUTY CLERK:  And for the defendant?

8        MR. McGOVERN:  James McGovern from Hogan Lovells on

9   behalf of the defendant, Mr. Reginald Fowler, who's present, as

10  well Scott Rosenblum and Scott Rackear from my office.  Good

11  afternoon, your Honor.

12       THE COURT:  Good afternoon.  Please be seated.

13       All right.  My understanding is that Mr. Fowler would

14  like to withdraw his previously entered plea of not guilty and

15  enter a plea of guilty to Count Four of the indictment pursuant

16  to an agreement with the government.  Is that correct?

17       MR. McGOVERN:  That's correct.

18       THE COURT:  All right.  Mr. Fowler, I want to ask you

19  some questions.  I'm going to require that your answers be

20  under oath, so I'll ask my wonderful and talented deputy to

21  administer the oath.

22       (Defendant sworn)

23       THE COURT:  All right.  Mr. Fowler, I want to make

24  sure that you understand that now that you've taken an oath to

25  tell the truth, if you were to deliberately lie in response to
```

K1HHFOWC

| | |
|---|---|
| 1 | any of my questions, you could face criminal prosecution for |
| 2 | perjury, obstruction of justice, or related offenses.  Do you |
| 3 | understand? |
| 4 | THE DEFENDANT:  Yes, sir. |
| 5 | THE COURT:  OK.  Make sure -- you don't need to stand |
| 6 | up.  Just bring that mic close to you.  The acoustics aren't |
| 7 | great. |
| 8 | Do you understand? |
| 9 | THE DEFENDANT:  Yes, sir. |
| 10 | THE COURT:  How old are you? |
| 11 | THE DEFENDANT:  Sixty. |
| 12 | THE COURT:  How far did you go in school? |
| 13 | THE DEFENDANT:  I got a master's degree. |
| 14 | THE COURT:  Are you currently under the care of a |
| 15 | doctor? |
| 16 | THE DEFENDANT:  No, sir. |
| 17 | THE COURT:  Are you currently taking any medication? |
| 18 | THE DEFENDANT:  No, sir. |
| 19 | THE COURT:  In the last 24 hours, have you had any |
| 20 | medication, pills, drugs, or alcoholic beverages? |
| 21 | THE DEFENDANT:  No, sir. |
| 22 | THE COURT:  Are you in any pain right now, physical |
| 23 | pain? |
| 24 | THE DEFENDANT:  No, sir. |
| 25 | THE COURT:  Is your mind clear as you sit here today? |

K1HHFOWC

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Are you under the care of a psychologist

3    or psychiatrist for any reason currently?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Defense counsel, have you discussed the

6    matter of pleading guilty with your client?

7          MR. McGOVERN:  Yes, your Honor.

8          THE COURT:  Do you feel that he understands the nature

9    of the rights he'd be waiving by pleading guilty?

10          MR. McGOVERN:  Yes, he does.

11          THE COURT:  Do you have any doubts about his

12    competence to proceed?

13          MR. McGOVERN:  No, your Honor.

14          THE COURT:  All right.  I will state for the record

15    for the record that Mr. Fowler appears alert.  He's answered

16    the questions appropriately.  I find that he's competent to

17    proceed, and we will continue.

18          Mr. Fowler, you have a constitutional right to

19    continue to plead not guilty to Count Four of the superseding

20    indictment.  Do you understand?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  If you persist in that right, you have the

23    right to a speedy and public trial by a jury.  Do you

24    understand?

25          THE DEFENDANT:  Yes, sir.

K1HHFOWC

1          THE COURT:  At that trial you'd be presumed innocent.

2    You would not have to prove that you're innocent.  Do you

3    understand?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  At that trial and at every stage of this

6    criminal litigation, you have the right to be represented by an

7    attorney.  Do you understand?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  If you could not afford to hire an

10   attorney, the Court would give you an attorney for free.  Do

11   you understand?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Counsel, are you retained or appointed on

14   this matter?

15         MR. McGOVERN:  We are retained, your Honor.

16         THE COURT:  At trial you'd be presumed innocent.  You

17   would not have to prove that you're innocent, and the burden of

18   proof would be on the government.  The government would be

19   required to prove each and every element of the crime charged

20   to a jury beyond a reasonable doubt.  Do you understand?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  All right.  Let's turn to those elements

23   for Count Four.  Just to recap, Count Four charges operation of

24   an unlicensed money transmitting business.  It charges that

25   from at least in or about February 2018, up to and in or about

K1HHFOWC

1    October 2018, in the Southern District of New York and

2    elsewhere, that Reginald Fowler and others, known and unknown,

3    did knowingly conduct, control, manage, supervise, direct, and

4    own all or part of an unlicensed money transmitting business

5    affecting interstate and foreign commerce, in violation of

6    Title 18, United States Code, Section 1960.  Do you understand

7    that charge, Mr. Fowler?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  For Count Four, the government would be

10   required to prove the following elements beyond a reasonable

11   doubt:  That you knowingly conducted an unlicensed money

12   transmitting business.  Do you understand?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And that that unlicensed money

15   transmitting business affected interstate and foreign commerce.

16   Do you understand?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Again, the government would be required to

19   prove that you conducted this business knowingly.  Do you

20   understand?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  If you plead guilty, you'll be giving up

23   your right to challenge the venue of the prosecution.  Do you

24   understand?

25             THE DEFENDANT:  Yes, sir.

7

K1HHFOWC

1          THE COURT:  Counsel for the government, have I left

2     out any elements of the offense?

3          MR. SWETT:  Your Honor, I would just note that the

4     money transmitting business registration requirements are

5     contained in 31 U.S.C. Section 5330.  So an unlicensed money

6     transmitting business is one that has not registered under that

7     provision.

8          THE COURT:  OK.  Did you hear that, Mr. Fowler?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  So, again, the government would have to

11     prove that this was, in fact, an unlicensed money transmitting

12     business.  Do you understand?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  An unlicensed money transmitting business

15     means a money transmitting business which affects interstate or

16     foreign commerce.  You understand?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And is operated without an appropriate

19     money transmitting license in a state where such operation is

20     punishable as a misdemeanor or a felony under state law,

21     whether or not you knew that the operation was required to be

22     licensed or that the operation was so punishable.  Do you

23     understand?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Or that the unlicensed money transmitting

8

K1HHFOWC

1    business was a business which failed to comply with the money

2    transmitting business registration requirements under

3    Section 5330 of Title 31, United States Code, or regulations

4    prescribed under such sections.  Do you understand?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Or that the business otherwise involved

7    the transportation or transmission of funds that are known to

8    you to have been derived from a criminal offense or are

9    intended to be used to promote or support unlawful activity.

10   Do you understand?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  So the government would have to prove this

13   was an unlicensed money transmitting business in one of those

14   three ways.  Do you understand?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  As counsel for the government just

17   indicated in court, the government's theory in this case is

18   that this business was an unlicensed money transmitting

19   business in that the business failed to comply with the money

20   transmitting business registration requirements under

21   Section 5330 of Title 31, United States Code.  Do you

22   understand?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Any other elements of the offense for

25   Count Four from the government?

K1HHFOWC

1          MR. SWETT:  No, your Honor.  Thank you.

2          THE COURT:  Are there any other elements of the

3    offense that I left out under Count Four, counsel for the

4    defense?

5          MR. McGOVERN:  No, your Honor.

6          THE COURT:  Mr. Fowler, the government would be

7    required to prove each and every one of those elements to a

8    jury beyond a reasonable doubt.  Do you understand?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  The government would not be required to

11    prove venue beyond a reasonable doubt, but as I told you

12    before, if you plead guilty, you'll be giving up your right to

13    challenge the venue of the prosecution.  Do you understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Venue means that the government is

16    required to normally bring the case in the judicial district

17    where the crime took place.  If you plead guilty, you'll be

18    giving up your right to challenge the venue of this

19    prosecution.  Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  In order to attempt to prove these

22    elements beyond a reasonable doubt, the government would call

23    witnesses.  Your lawyer could question those witnesses.  You

24    understand?

25          THE DEFENDANT:  Yes, sir.

K1HHFOWC

1        THE COURT:  In order to attempt to prove those

2   elements, the government would introduce evidence.  Your lawyer

3   would have a right to object to that evidence.  Do you

4   understand?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  You'd have a right to call witnesses on

7   your own behalf at trial, and your lawyer would have the

8   subpoena power of the United States to make witnesses come to

9   court for you.  Do you understand?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  You could testify in your own behalf at

12  trial, but at the same time, you could not be forced to testify

13  because you have a right, or privilege, against

14  self-incrimination.  Do you understand?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  All right.  I see you're coughing a little

17  bit.  Would you like some water or cough drop or anything?

18       THE DEFENDANT:  I'm OK, sir.  Thank you.  Appreciate

19  it.

20       THE COURT:  All right.  The right or privilege against

21  self-incrimination means that you cannot be required to say

22  anything out of your own mouth that makes you appear guilty.

23  Do you understand?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  So even if you are guilty, you're not

K1HHFOWC

1    required to plead guilty.  Do you understand?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  You could remain silent and force the

4    government to attempt to prove each and every element of the

5    crime charged beyond a reasonable doubt.  Do you understand?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  If the government could not prove each and

8    every element of the crime charged beyond a reasonable doubt,

9    the jury would have an obligation to find you not guilty.  Do

10   you understand?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  So, again, even if you are guilty, you're

13   not required to plead guilty.  Do you understand?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  On the other hand, if you decide to plead

16   guilty, I'll have to ask you what you did that makes you guilty

17   of the crime charged in Count Four of the superseding

18   indictment, and when you answer that question, you'll be saying

19   things out of your own mouth making you appear guilty, thereby

20   giving up your right, or privilege, against self-incrimination.

21   Do you understand?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  All right.  Let's talk about the

24   sentencing process.  If I accept your plea of guilty, you'll

25   meet with the probation department, and they'll prepare a

K1HHFOWC

1    presence report, or a probation report.  That report will

2    have information about you and the crime that you're alleged to

3    have committed.  Do you understand?

4                    THE DEFENDANT:  Yes, sir.

5                    THE COURT:  That report will also have the probation

6    department's sentencing guideline calculation.

7                    Have you and your attorney discussed the sentencing

8    guidelines and how they might apply to your case?

9                    THE DEFENDANT:  Yes, sir.

10                   THE COURT:  The sentencing guidelines are advisory.

11   What that means is, although I'm required to determine the

12   guideline range that applies to your case, once I make that

13   determination, I am not required to sentence you within that

14   range.  Do you understand?

15                   THE DEFENDANT:  Yes, sir.

16                   THE COURT:  I will determine the guideline range that

17   applies to your case, and I will determine the sentence which

18   may be inside or outside of that range.  Do you understand?

19                   THE DEFENDANT:  Yes, sir.

20                   THE COURT:  Since I will be making that determination

21   and I have not made that determination yet, as you sit here

22   today, there is no promise as to what your guideline range will

23   be, nor is there a promise as to what your sentence will be.

24   Do you understand?

25                   THE DEFENDANT:  Yes, sir.

K1HHFOWC

| | |
|---|---|
| 1 | THE COURT:  If the guideline range that I determine is |
| 2 | different than what you were hoping for, that will not be a |
| 3 | ground for you to take your plea back.  Do you understand? |
| 4 | THE DEFENDANT:  Yes, sir. |
| 5 | THE COURT:  If the sentence I impose is different than |
| 6 | what you are hoping for, that will not be a ground for you to |
| 7 | take your plea back.  Do you understand? |
| 8 | THE DEFENDANT:  Yes, sir. |
| 9 | THE COURT:  All right.  Let's turn to your agreement |
| 10 | with the government.  I believe you have that in front of you. |
| 11 | Is that your signature on the last page of that document? |
| 12 | THE DEFENDANT:  Yes, sir. |
| 13 | THE COURT:  Before signing this, did you read it? |
| 14 | THE DEFENDANT:  Yes, sir. |
| 15 | THE COURT:  Did you discuss it with your attorney? |
| 16 | THE DEFENDANT:  Yes, sir. |
| 17 | THE COURT:  Do you understand it? |
| 18 | THE DEFENDANT:  Yes, sir. |
| 19 | THE COURT:  Does that agreement constitute the |
| 20 | entirety of your agreement with the government? |
| 21 | THE DEFENDANT:  Yes, sir. |
| 22 | THE COURT:  Counsel for the government and the |
| 23 | defense, is that correct? |
| 24 | MR. SWETT:  Yes, your Honor. |
| 25 | MR. McGOVERN:  Yes, your Honor. |

K1HHFOWC

| 1 | THE COURT:  All right.  Let's talk about the statutory

2   penalties that apply, and then we'll go over some portions of

3   the agreement.  We're not going to go over the entire

4   agreement.

5       Starting, first, with the statutory penalties, Count

6   Four has a maximum term of imprisonment of five years.  Do you

7   understand?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  There's a maximum term of supervised

10  release of three years.  Do you understand?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Supervised release is like a term of

13  probation you'd serve after a term of custody.  You'd be

14  subject to drug testing, visits to a probation officer's

15  office, and other limitations on your freedom.  Do you

16  understand?

17      THE DEFENDANT:  Yes, sir.

18      THE COURT:  If you were to violate the condition of

19  supervised release, you could be sentenced to an additional

20  term of custody and an additional term of supervised release

21  without credit for time previously served in custody or on

22  supervised release.  Do you understand?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  You'd be subject to the possibility of a

25  fine which would be based on your ability to pay it.  For Count

K1HHFOWC

1    Four, the maximum fine is the greatest of $250,000 or twice the

2    gross pecuniary gain derived from the offense or twice the

3    gross pecuniary loss to persons other than you resulting from

4    the offense.  Do you understand?

5             THE DEFENDANT:  Yes, sir.

6             THE COURT:  There's also a $100 special assessment

7    which is like a fine, except it is mandatory.  I must impose

8    that whether you can afford to pay it or not.  Do you

9    understand?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Count Four has a requirement that you pay

12   restitution.  Do you understand?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  I want to make sure that you understand

15   that if you are not a United States citizen, your guilty plea

16   and conviction make it very likely that you'd be removed from

17   or deported from the United States.  Do you understand?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  Have you discussed that with your

20   attorney?

21            THE DEFENDANT:  No, sir.

22            THE COURT:  OK.  Go ahead and discuss that briefly

23   with your attorney.

24            (Counsel conferred with defendant)

25            MR. McGOVERN:  We're prepared to proceed, your Honor.

K1HHFOWC

1          THE COURT:  OK.  Have you discussed that with your

2     attorney, Mr. Fowler?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And defense counsel, have you discussed

5     that with your client?

6          MR. McGOVERN:  We have, your Honor.  Mr. Fowler is a

7     U.S. citizen, so I apologize.  It never really came up.

8          THE COURT:  OK.  I want to make sure that you

9     understand, though, Mr. Fowler, that if you are not a United

10     States citizen, your guilty plea and conviction make it very

11     likely that you'd be removed from the United States.  Do you

12     understand?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  You have a statutory right to

15     appeal.  Do you understand?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Now turning more specifically

18     to the agreement, while you have a statutory right to appeal

19     under your agreement, you have agreed not to file a direct

20     appeal, nor bring a collateral challenge of any sentence at or

21     below a sentence of 60 months' imprisonment.  Do you

22     understand?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Under your agreement, you have agreed to

25     admit the forfeiture allegations with respect to Count Four of

K1HHFOWC

1   the indictment.  Do you understand?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  I have before me a consent preliminary

4   order of forfeiture which appears to have your signature on the

5   last page.  Is this your signature on the last page of this

6   document?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  OK.  Before signing it, did you read it?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Did you discuss it with your attorney?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Do you understand it?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  By signing this document, are you

15   consenting to a preliminary order of forfeiture?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  In the amount of $371 million?

18             MR. McGOVERN:  Your Honor, generally, that is the

19   agreement, that we're consenting to that forfeiture.  You'll

20   see that there are numerous bank accounts cited.  So Mr. Fowler

21   at this point is not in a position to accurately state how much

22   is in any one of those bank accounts.  I think the government

23   has those balances and has done the math that brings us to the

24   371 million.  So the agreement, by virtue of this forfeiture

25   order, is that we're going to forfeit all interest in those

18

K1HHFOWC

1    bank accounts, and based on what we've learned from the

2    government, the expectation is that they contain approximately

3    $371 million.

4                THE COURT:  Anything from the government on this?

5                MR. SWETT:  Your Honor, the forfeiture order includes

6    a money judgment of $371 million that is to be satisfied, in

7    part, through the 50-some-odd accounts that are contained in

8    the preliminary order of forfeiture.  But to be clear, the

9    difference between what's in those accounts and 371 million,

10   Mr. Fowler would still be on the hook for that as well.

11               THE COURT:  OK.  Do you understand that, Mr. Fowler?

12               THE DEFENDANT:  No, I did not hear what he said.

13               THE COURT:  OK.  He basically said that -- and correct

14   me if I'm wrong, counsel for the government -- that this

15   forfeiture order, this preliminary order of forfeiture, by

16   signing this you're agreeing to forfeit a sum of money equal to

17   $371 million.  If the money in those bank accounts that's

18   listed in this order, if that doesn't add up to $371 million,

19   you're still going to be on the hook for the balance.  You're

20   going to be on the hook for $371 million regardless.  Do you

21   understand that?

22               MR. McGOVERN:  If I may, your Honor.  Our

23   understanding of the agreement is that the sum total of what

24   was in the accounts amounted to $371 million.  In other words,

25   we were not advised that there was a specific, let's say, line

K1HHFOWC

1    between some conduct and the number 371.  It was our

2    understanding that these accounts added up to $371 million.  If

3    that was not the government's intention, that was not what was

4    communicated to us.  Perhaps the answer is to hammer out this

5    in a more specific way, separately from the plea agreement, but

6    I'd just like some clarification from the government on that

7    issue.

8              THE COURT:  It may be that what we're talking about is

9    a distinction without a difference, but let me hear from the

10   government.

11             What's the government's view on this?  Let me just

12   make sure I understand where we are, but let me hear from the

13   government.

14             MR. SWETT:  Your Honor, may I just have one moment,

15   please?

16             THE COURT:  Sure.

17             (Counsel confer)

18             MR. SWETT:  Your Honor, we're not in a position to

19   represent that these accounts have $371 million, nor did we

20   ever communicate that to defense counsel.  I think the plea

21   agreement and the forfeiture order are quite clear that the sum

22   total is $371 million, and whether or not those bank accounts

23   contain that amount, he is required to consent to forfeiture up

24   to that amount.

25             THE COURT:  Hold on a second.

K1HHFOWC

1          MR. SWETT:  Your Honor.

2          THE COURT:  OK.  I will note that it appears to me

3     that, again, under the agreement, he's admitting to the

4     forfeiture allegation with respect to Count Four of the

5     superseding indictment.  The forfeiture allegations that I

6     see -- hold on a second.

7          It may not be necessary to work this out now, but it

8     seems that, unless I'm looking at the wrong document, the

9     forfeiture allegations that I see attached to the superseding

10    indictment, first, do not have a specific amount in them, and

11    they also seem to -- in the first sentence of that seem to be

12    talking about Counts One and Two of the indictment and not

13    specifically naming Count Four, but perhaps this is something

14    that can be ironed out later.

15         MR. SWETT:  Your Honor, can I have a moment to confer

16    with defense counsel?

17         THE COURT:  Sure.

18         (Counsel confer)

19         MR. SWETT:  Your Honor.

20         THE COURT:  Yes.

21         MR. SWETT:  If the Court may indulge us, I think 15

22    minutes to discuss this with defense counsel might be

23    beneficial.  There are things here that we need to work out,

24    and we don't want to keep the Court waiting while we do that.

25    If it's possible, could we have a 15-minute adjournment to

K1HHFOWC

1    discuss this matter?

2            THE COURT:  OK.  That's fine.  In addition, I just

3    want to make sure that -- I want to clarify something not

4    related to that.

5            Looking at the agreement and the accounts that we were

6    just talking about, I notice there are a couple of accounts

7    here at JPMorgan Chase Bank.  My wife is an attorney up until

8    recently worked at JPMorgan Chase Bank.  We still own stock in

9    JPMorgan Chase Bank.  I want to make sure there's no conflict.

10   My wife is also now employed at Bank of New York.  I don't see

11   them listed, but I just wanted to make counsel aware of that.

12           It seems to me that if this is just simply a matter of

13   the accounts are at JPMorgan Chase, it seems to me there's no

14   conflict.  But if JPMorgan Chase is somehow a victim, then that

15   may be a different thing, and perhaps a different judge should

16   handle this.  This may be the sort of thing where it still

17   might be OK for me to take the plea, but then perhaps another

18   judge should handle this on sentencing.

19           Does the government have any view on this at this

20   point?

21           MR. SWETT:  Your Honor, I will say as for the 1960

22   charge for which the defendant is pleading guilty, JPMorgan

23   would not be a victim, so I don't think it's an issue, but I'm

24   happy to hear defense counsel's view on this as well.

25           MR. McGOVERN:  We have no objection to your Honor

1   continuing as the judge of this case.  As you'll see once you

2   learn more about the case from the investigation, these banks

3   all -- none of these banks lost any money as a result of the

4   money being there.  In fact, they probably made money on it.

5            THE COURT:  All right.  I'll give counsel 15 minutes.

6            MR. SWETT:  Thank you, your Honor.

7            MR. McGOVERN:  Thank you.

8            (Recess)

9            THE COURT:  OK.

10            MR. SWETT:  Your Honor, we have some work to do on the

11   forfeiture piece of this.

12            THE COURT:  OK.

13            MR. SWETT:  We're not going to continue the plea

14   today.

15            THE COURT:  OK.

16            MR. SWETT:  This case has been on for some months now.

17   We've been trying to work this out, and we may still work it

18   out.  But given where we are and given that all the parties are

19   here, the government would request at this time that the Court

20   set a reasonable trial date for this so we have some sense of

21   certainty as to when this case will go forward to trial if we

22   can't work it out.

23            THE COURT:  OK.  Defense counsel?

24            MR. McGOVERN:  We have really little choice but to

25   agree with the government's position.  I will say, for the

K1HHFOWC

1  record, that we have made it clear that it's been Mr. Fowler's

2  intention to plead guilty in the manner that we described

3  today.  For quite some time we really were dealing with more of

4  the calculation issues and those types of issues.  So we're

5  still optimistic that the case will be resolved.

6          The issue with respect to the forfeiture that became

7  an issue for us today stems from the fact that none of the

8  parties seem to have an idea of how much money is at play here

9  in the forfeiture order because these accounts that have all

10 been frozen by one entity or another have an amount of money

11 that nobody seems to know how much is in there.  So our issue

12 is how much actual exposure under the forfeiture order after

13 the accounts are liquidated is Mr. Fowler looking at.  That's

14 kind of the heart of the issue.

15         So if the government wants to set a trial date as a

16 point for us to work toward and hopefully resolve the matter in

17 very short order, then that's the option that we're presented,

18 and if we're going to proceed to trial, we may have to file

19 some motions as well, but I think if the government wants a

20 trial date at this point, then we'll certainly endeavor to

21 dispose of the case before then.

22         THE COURT:  How long would this trial take?

23         MR. SWETT:  Two weeks, your Honor.

24         THE COURT:  From defense counsel's perspective?

25         MR. McGOVERN:  Probably two or three days.

K1HHFOWC

1          THE COURT:  OK.

2          MR. McGOVERN:  Of a defense case.

3          Perhaps as an option, your Honor, we'd ask for another

4    status maybe while we sort this out.  Perhaps that's an option.

5    I mean, as you saw, Mr. Fowler was fully intending to take a

6    plea here just now.  Perhaps it would be wiser for us to set a

7    status in the near term, and then that way we can be in a more

8    prepared position if we're going to set a trial schedule.

9          THE COURT:  Government, what's your view on that?

10         MR. SWETT:  Your Honor, we've set numerous status

11   conferences in this case.  I don't see the harm in setting a

12   trial date.  It doesn't need to be in a month or two months,

13   but it does give us an endpoint.  And we agree that we're going

14   to try to work out a resolution here, and we're hopeful that it

15   will happen, but we don't want to come back in a month and be

16   in the same position when we can set a date today that will

17   focus everyone's minds on getting this wrapped up.

18         THE COURT:  All right.  How about April 27 as a trial

19   date?  Does that work for the government and the defense?

20         MR. SWETT:  Yes, your Honor.

21         MR. McGOVERN:  Yes, your Honor.

22         THE COURT:  So we'll schedule this matter for trial.

23   Jury selection and trial on Monday, April 27.  Any motions *in*

24   *limine* should be filed by April 14, that Tuesday.  Any response

25   should be filed by April 21.

K1HHFOWC

1          And let's do this:  Let's have jury selection and

2     trial start on April 28.  Let's have the final pretrial

3     conference on Monday, April 27, at 12 noon.  Let's have

4     proposed jury instructions filed by April the 16th, and any

5     voir dire requests also by Tuesday, April 16.

6          Hold on.  I'm sorry.  I've got the wrong.  I misspoke.

7     April 14 for the jury instructions and April 14 for any voir

8     dire requests.

9          OK.  It might make sense -- well, first, let's do

10    this:  It seems to me that it makes sense to exclude time under

11    the Speedy Trial Act between today's date and April the 28th

12    because the parties are engaged in active plea negotiations,

13    and defense counsel will need time to be better prepared for

14    trial.  Anyone object to that?

15          MR. SWETT:  No, your Honor.

16          MR. McGOVERN:  No, your Honor.

17          THE COURT:  All right.  I find it is in the interest

18    of justice and in the interest of Mr. Fowler to exclude time

19    under the Speedy Trial Act from today's date until April 28.  I

20    further find that those interests outweigh the public's

21    interest in a speedy trial, and I will enter an order to that

22    effect.

23          Perhaps it may make sense to get a joint status report

24    from the parties in a couple of weeks to see where we are, if

25    the parties have resolved this forfeiture issue, but what's

1    counsel's thoughts on that?

2              MR. SWETT:  That's fine, your Honor.  Obviously, the

3    moment we have an agreement, we will contact the Court to get

4    this on the calendar for plea, but we're happy to put in a

5    letter in two weeks if there's no -- if we haven't come to a

6    resolution at that point.

7              THE COURT:  Obviously, if you come to a resolution,

8    you don't need to file that letter.  We'll get it scheduled

9    quickly.

10             MR. McGOVERN:  Judge, I just wanted to put on the

11   record, in the unlikely event this proceeds to trial, we may

12   have some other suppression-type motions -- there were search

13   warrants that were conducted in this case -- and we may file

14   those, but we'll file those in the nearer term.

15             THE COURT:  All right.  Can we get a date two weeks

16   from now, Tara.

17             THE DEPUTY CLERK:  The 31st, January 31.

18             THE COURT:  OK.  Let's get a joint status report on

19   January 31.

20             Anything else from the government?

21             MR. SWETT:  No.  Thank you, your Honor.

22             THE COURT:  Anything else from the defense?

23             MR. McGOVERN:  No.  Thank you, your Honor.

24             THE COURT:  OK.  We're adjourned.

25             (Adjourned)