

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T +1 212 918 3000
F +1 212 918 3100
www.hoganlovells.com

November 18, 2020

**BY ELECTRONIC MAIL**

The Honorable Andrew L. Carter, Jr.
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Reginald Fowler*, **S3 19 Cr. 254 (ALC): Ex Parte Affirmation – Contains Attorney-Client Privileged Materials**

Dear Judge Carter:

Pursuant to the Court's directive at the conference in this matter on Friday, November 13, 2020, we respectfully submit this *ex parte* letter, under seal, to supplement our motion to withdraw as counsel, filed on November 9, 2020. The purpose of this submission is to provide the Court with an expanded factual basis, which would otherwise be protected by the attorney-client privilege, to support our motion to withdraw. Based on the following, we respectfully submit that the Court should grant the motion and permit Hogan Lovells US LLP and Rosenblum Schwartz & Fry, P.C. to withdraw from the case.

- From the very inception of this matter, we have been led to believe that Mr. Fowler is a high net worth individual with substantial assets, which would allow him to pay his legal bills with little hardship. Throughout the relationship, Mr. Fowler has never indicated that he did not possess assets sufficient to cover our legal bills. On the contrary, Mr. Fowler has insisted that he maintains the ability, or will soon have sufficient ability, to pay his legal bills. Beyond Mr. Fowler's representations, there have been multiple indications, detailed below, over the course of this relationship that have led us reasonably to believe that Mr. Fowler has the ability to honor his contractual obligations pursuant to our retainer agreements. Moreover, on our end, we have undertaken significant effort and due diligence to assist Mr. Fowler in identifying available assets or funds to satisfy those contractual obligations. Yet, to this day, despite repeated requests and efforts, we have not received payment of a single invoice beyond the $25,000 initial retainer received on November 6, 2018, while our current bill exceeds $600,000.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C.   Associated Offices: Budapest Jakarta Riyadh Shanghai FTZ Ulaanbaatar Zagreb.   Business Service Centers: Johannesburg Louisville. Legal Services Center: Berlin.  For more information see www.hoganlovells.com

November 18, 2020

- Mr. Fowler was first referred to us as a potential client in or around October 2018. An engagement letter was sent to Mr. Fowler on or about October 31, 2018, and we then had our first meeting with Mr. Fowler on November 8, 2018. This meeting occurred at around the time that Mr. Fowler was contacted by agents of the Federal Bureau of Investigation (the "FBI"). At that first meeting, Mr. Fowler told us that he possessed a letter from ▮▮▮▮▮▮▮▮ stating that, since 2015 (*i.e.*, long before the commencement of the charged conspiracy), he had millions of dollars in personal funds in an account ▮▮▮▮▮. Mr. Fowler also represented that he had significant amounts of personal funds ▮▮▮▮▮▮▮▮ (Mr. Fowler made this representation repeatedly during the course of the representation). Nevertheless, Mr. Fowler informed us at the time that the Department of Justice had recently frozen both his ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. When we agreed to represent Mr. Fowler, it was our understanding that he had been targeted by cryptocurrency businessmen seeking to take advantage of Mr. Fowler's personal balance sheet as a means of transacting cryptocurrency transactions without drawing the attention of bank compliance officers or regulators. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As noted, it was during this period of time that Mr. Fowler made his first and last payment of $25,000 to Hogan Lovells.

- In other meetings, in and around late 2018, Mr. Fowler further represented to us that he had real estate investments worth a couple hundred million dollars, leased and/or operated over a dozen properties ▮▮▮▮▮▮▮▮, had over $50 million available to him ▮▮▮▮▮▮▮▮, owned or was involved in a litany of business ventures ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

November 18, 2020

- In May 2019, following his arrest in Arizona on an SDNY indictment, Mr. Fowler's release was conditioned on a $5 million personal recognizance bond, secured by five properties that he owned. As part of the bail package, the defense demonstrated that the estimated value of the five properties posted was in excess of $1.3 million. Notably, in or around the same time period, Mr. Fowler represented to us that he owned additional properties that could also be posted for bail purposes, if necessary. ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████

- After his release on bail, one of the first things Mr. Fowler did was to retain Scott Rosenblum of Rosenblum, Schwartz & Fry, P.C., to join the defense team. Mr. Rosenblum and Mr. Fowler agreed to a retainer fee of $275,000 and then, were the case to proceed to trial, an additional retainer of $85,000 per week for the trial. Mr. Rosenblum and Mr. Fowler entered this agreement in the understanding that Mr. Rosenblum would be part of a team and participate in the trial as one of the lead trial lawyers. Importantly, neither Mr. Fowler nor Mr. Rosenblum ever contemplated that Mr. Rosenblum, or his firm, would serve as Mr. Fowler's sole representation. Mr. Rosenblum received a partial retainer of $100,000, an amount that Mr. Rosenblum has exceeded in his representation so far of Mr. Fowler. Significantly, Mr. Fowler paid Mr. Rosenblum the $100,000 retainer while he had several unpaid, overdue invoices for legal services issued by Hogan Lovells.

- ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ [redacted]

- During the course of the representation, Mr. Fowler represented to us – and provided documentary evidence corroborating – that he owns a company ████████████ ████████████████████, which holds bonds ████████████████████████████ with a value of $900 million that were issued by an entity identified ████████████. ██ ████████████████████████████████████████████████████████████████████████████

3

November 18, 2020



- Additionally, ███████████ Mr. Fowler's lawyer in Portugal, ███████████ was being paid by Mr. Fowler for her services. We also have been provided and reviewed invoices issued by the international law firm of Reed Smith LLP indicating that Mr. Fowler paid that firm for legal services rendered in 2018. The fact that other attorneys had received payments from Mr. Fowler for their services led us reasonably to believe that Mr. Fowler's representations to us that he would pay our bills was truthful.

- The record will demonstrate that beginning in the second half of 2019, we continued to be very diligent about seeking payment from Mr. Fowler, and sent him several e-mail communications to that effect. It was in or around that time that Mr. Fowler represented that he was working on a separate transaction unrelated to GTS or cryptocurrency that would generate liquidity to pay his bills. A review of our records indicates communications sent to Mr. Fowler requesting information about his progress in making his promised payments on: June 25, 2019; December 20, 2019 (following up on a representation that we would receive payment that week due to the expected closing of a transaction); December 24, 2019 (following up on a subsequent representation from Mr. Fowler the day prior that indicated the deal was on the cusp of closing); December 28, 2019 (following up on the deal closing that was said to permit payment by the week of December 16, 2019); January 3, 2020 (again requesting an update as to the same deal); January 29, 2020 (asking to discuss a deal Mr. Fowler said to have in place with a company ███████████████████████████████████████ that would help facilitate payment); February 6, 2020 (sending unpaid invoices for previous months); February 10, 2020 (following up on unpaid invoices); February 11, 2020 (asking for an update on the closing of the ███████████); and February 18, 2020 (requesting a status report as to the ███████████). Throughout these communications, Mr. Fowler consistently represented to us that payment of his outstanding legal fees was imminent, that transactions or business deals that would fund the payment of our fees were in process, and that there were multiple mechanisms

4

- through which he could feasibly fund his defense.  He also repeatedly confirmed his understandings of his contractual obligations to us and commitment to paying.

- Based on Mr. Fowler's representations and the additional evidence discussed above, we reasonably believed that Mr. Fowler would satisfy our outstanding legal fees at any moment.  As Your Honor is aware, this case was set to be resolved by guilty plea on January 17, 2020.  But for a disagreement over the amount of the forfeiture order, ███ 

- On February 18, 2020, Mr. Fowler provided us with additional information from his potential business partners for the ███████████, demonstrating that the transaction would close soon; he also promised that the income from this transaction would cover all of his outstanding legal bills.

- About one month after the failed plea hearing, on February 20, 2020, the Government filed a superseding indictment against Mr. Fowler.  At this point, we fully realized the likelihood that this case could proceed to trial.  Accordingly, we advised Mr. Fowler that he needed to immediately pay all past invoices and provide a substantial retainer to fund the costs of trial preparation and trial.  To that end, as mentioned in our current motion, we sent Mr. Fowler a letter on February 26, 2020, informing him that we intended to move to withdraw if he did not pay all outstanding bills and provide a retainer to fund his defense at trial.  The high likelihood of this case proceeding to trial was confirmed during the March 5, 2020 arraignment of Mr. Fowler on the superseding indictment.

- Within a week or so after we sent our letter and Mr. Fowler's arraignment, the COVID-19 pandemic took hold.  At this point, we could not meaningfully push Mr. Fowler for receipt of the outstanding funds because he informed us that his businesses had been brought to a complete standstill by the pandemic.  Regardless, we continued to contact Mr. Fowler in an effort to resolve the fee dispute, which could potentially allow us to move forward with his defense.  In response to his repeated claims that his business ventures would provide funding for his legal expenses, we sent numerous e-mails to Mr. Fowler seeking to discuss the payment of the outstanding legal bills on:  April 1, 2020; May 4, 2020; May 11, 2020; May 12, 2020; May 15, 2020; May 20, 2020; May 21, 2020; June 10, 2020; June 17, 2020; and June 23, 2020.  No payments were made regardless.

- During this time period, Mr. Fowler also represented to us that, despite challenges brought on by the outbreak of COVID-19, his business partners remained committed to completing the ███████████.  Following such a representation on March 13, 2020, we followed up with him on March 19, 2020, asking for an update on the transaction as well as additional potential sources for payment.  No payment related to this project, or other potential sources, was received.  On April 1, 2020, Mr. Fowler vowed to have the money he owed to us fully resolved by the end of the summer.  No portion of the outstanding balance was received by that point either.  Further, Mr. Fowler

5

November 18, 2020

represented, in a communication dated May 15, 2020, that he had raised a portion of the past due invoices and had commitments that well exceeded the outstanding balance. He also reported that he had multiple assets that were valued in excess of $1 million that he was in the process of selling to fund his legal defense. We received no payments in connection with the disposition of such assets, or otherwise.

- Beginning in July of 2020, we pressed Mr. Fowler regarding the outstanding legal bills. Mr. Fowler continued to represent to us that he would have substantial income imminently that would fund the bills and the required trial retainer. In July, Mr. Fowler again informed us that the ▮▮▮▮▮ would soon close and provide him with substantial income, well over $200,000 per week, which would be used to pay our bills. In further support of his claim, on July 2, 2020, we received a letter from ▮▮▮▮▮ ▮▮▮▮▮ (ranked ▮▮ by the National Law Journal with over ▮▮ ▮▮▮▮▮ in revenue in 2019) on behalf of Mr. Fowler. In the letter, ▮▮▮▮▮ informed us that, based on the conversations ▮▮▮▮▮ had that day with the primary contact for the counterparty in the ▮▮▮▮▮, weekly payments were set to begin shortly. In addition, ▮▮▮▮▮ represented that, under the investment contract entered into by Mr. Fowler, Mr. Fowler was set to receive an initial payment of $200,000 and weekly payments for the next year of $284,000 per week from the ▮▮▮▮▮ ▮▮▮▮▮.

- Since July 2020, Mr. Fowler has continuously represented to us that he would soon start to receive payments related to the ▮▮▮▮▮, and that those funds would easily source the payment of his legal fees. Nevertheless, Mr. Fowler has not paid any portion of the outstanding legal bills.

- A review of our records indicates that communications were sent to Mr. Fowler regarding these or other representations regarding promised payments on: July 1, 2020 (following up on payments promised by the end of June); July 23, 2020; August 3, 2020; August 10, 2020; August 11, 2020; August 14, 2020; August 18, 2020 (inquiring as to the status of payments promised the week prior); September 8, 2020; September 16, 2020; September 17, 2020; September 23, 2020; October 2, 2020; October 6, 2020; October 13, 2020 (informing Mr. Fowler that we had not received a payment that he had promised we would receive the week of October 5th); October 14, 2020 (asking Mr. Fowler for an update on the ▮▮▮▮▮ he represented would serve as a source of payment); October 15, 2020; October 17, 2020; and October 27, 2020.

- In fact, as recently as October 13, 2020, Mr. Fowler provided us with a list of seven properties that he represented as being unencumbered and able to be borrowed against, totaling a claimed value of $10.3 million. Since then, we have made inquiries to Mr. Fowler about payment of legal bills on October 14, 2020, October 27, 2020; October 30, 2020; and November 6, 2020, in a final effort to salvage our relationship with Mr. Fowler.

6

November 18, 2020

Despite all of his representations and all of our efforts to obtain payment, we still have not received payment beyond the $25,000 Mr. Fowler paid us in November 2018 to cover the costs of representing him in connection with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the business activities of GTS.

Mr. Fowler consistently represented that he was able to satisfy his financial obligations to us or that he was on the precipice of completing a business transaction that would put him in a position to pay his bills. Our correspondence with Mr. Fowler reflects multiple promises by him to abide by his contractual obligations, and he repeatedly assured us that payment of his outstanding legal fees, in at least some amount, was imminent. Crediting everything Mr. Fowler has told us to date, he appears to have sufficient assets to pay the legal fees he contractually owes, yet, by and large, has refused to do so. Indeed, ▬▬▬▬▬▬▬▬ he owns more than $10 million in real estate that is unencumbered and could have been liquidated or monetized at any point during the past two years.

Courts in this District have consistently held that non-payment of attorney's fees is a proper basis for counsel to withdraw. *See Sentient Flight Grp., LLC v. Klein*, No. 7:09-CV-07170, 2011 WL 1431987, at *1 (S.D.N.Y. Jan. 6, 2011) (granting a motion to withdraw where the client failed to make a payment for any part of legal services rendered in a case that had been ongoing for over a year); *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 Civ. 5463(CM)(GWG), 2009 WL 969925, at *2 (S.D.N.Y. Apr. 7, 2009) ("Attorneys are not required to represent clients without remuneration, and the failure to pay invoices over an extended period is widely recognized as grounds for leave to withdraw."); *Century Jets Aviation, LLC v. Alchemist Jet Air, LLC*, Nos. 08 Civ. 9892(PKL)(KNF), 09 Civ. 7659(PKL)(KNF), 2009 WL 4035642, *2 (S.D.N.Y. Nov. 23, 2009) (collecting cases in support of the "well-settled" fact that non-payment of legal fees is a proper basis for withdrawal of counsel).

Further, the New York Rules of Professional Conduct specifically state that "a lawyer may withdraw from representing a client when:…the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." *Id.* at 1.16(c)(4). Such is the case here. Despite the repeated requests for payment under the contract, and Mr. Fowler's repeated representations about his ability to pay his legal bills, he has still refused to honor his financial obligations under the contract. Unfortunately, Mr. Fowler's refusal to pay his legal bills has led to a breakdown in the attorney-client relationship. *Life Dome Cinema Ministry v. Church Loan & Inv. Tr.*, 499 F.Supp.2d 399, 401 (S.D.N.Y. 2007) (explaining that withdrawal is permitted when "an unwillingness or inability to pay…bespeaks of a breakdown in the attorney-client relationship"); *but see Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 WL 672245, at *2 (S.D.N.Y. Feb. 17, 2011) (stating that "more recent case law in the Southern and Eastern Districts of New York has held that non-payment of legal fees alone can be a satisfactory reason for withdrawal").

November 18, 2020

Based on the foregoing, we respectfully request that the Court grant the motion.

Respectfully submitted,

/s/ James G. McGovern
James G. McGovern
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
Tel.: 212-918-3000
Fax: 212-918-3100
james.mcgovern@hoganlovells.com

/s/ Michael C. Hefter
Michael C. Hefter
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
Tel.: 212-918-3000
Fax: 212-918-3100
michael.hefter@hoganlovells.com

/s/ Scott Rosenblum
Nat Scott Rosenblum
Rosenblum, Schwartz & Fry P.C.
120 S. Central Ave., Suite 130
Clayton, MO 63105
Tel.: 314-862-4332
Fax: 314-862-8050
srosenblum@rsrglaw.com