KAFLFOWC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

UNITED STATES OF AMERICA,

        v.                        19 Cr. 254 (ALC)

REGINALD FOWLER,
                                Teleconference

         Defendant.

-------------------------------x

                                New York, N.Y.
                                October 15, 2020
                                2:00 p.m.

Before:

                HON. ANDREW L. CARTER, JR.,

                                District Judge

                       APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
SEBASTIAN SWETT
JESSICA GREENWOOD
SAMUEL ROTHCHILD
    Assistant United States Attorneys

Hogan Lovells US LLP
    Attorneys for Defendant
James G. McGovern
MICHAEL HEFTER
SAMUEL RACKEAR

KAFLFOWC

1          THE COURT:  Let's go ahead and call it.

2          DEPUTY CLERK:  Okay.  Counsel, I'm just going to ask

3     that when you address the Court, to please state your name each

4     time prior to talking, and when you are not addressing the

5     Court, to please place your phones on mute.  We do have a court

6     reporter on the line and we'd like an accurate record of

7     today's conference.  Thank you.

8          (Case called)

9          DEPUTY CLERK:  Counsel, please state your appearance

10    for the government.

11         MR. SWETT:  Good afternoon.

12         This is AUSA Sebastian Swett, for the United States.

13    I'm joined on the line by AUSAs Jessica Greenwood and Sam

14    Rothchild as well.

15         DEPUTY CLERK:  And for the defendant?

16         MR. MCGOVERN:  It's Jim McGovern and Michael Hefter

17    and Samuel Rackear, from Hogan Lovells, on behalf of Mr.

18    Fowler.  And I believe we were just joined by Mr. Rosenblum

19    from St. Louis.

20         Is that right, Scott?

21         Well, I guess not.  And Mr. Fowler is, of course, on

22    the line as well.

23         DEPUTY CLERK:  Mr. Fowler, please state your name for

24    the record.  Thank you.

25         THE DEFENDANT:  Reginald Fowler.

KAFLFOWC

1        DEPUTY CLERK:  Thank you.

2        THE COURT:  Okay.  Good afternoon.  I hope everyone is

3   safe and healthy.

4        We're proceeding by telephonic conference due to the

5   COVID-19 pandemic.  I will note that in the past conferences,

6   Mr. Fowler has been appearing by telephone anyway because he

7   doesn't reside in New York City.  And we will continue to allow

8   that.

9        And just for the record, Defense Counsel, do you waive

10   your client's formal appearance in court for the purposes of

11   this call?

12        MR. MCGOVERN:  That's correct, your Honor.

13        THE COURT:  All right.  How do the parties wish to

14   proceed?

15        Let me hear from the government first?

16        MR. SWETT:  Your Honor, this is AUSA Sheb Swett.

17        And the government would like to proceed with the

18   January 11th trial date.  We understand that S.D.N.Y. has a

19   committee that prioritizes trials based on a number of factors.

20   And we don't know right now where this trial fits in, because

21   we know there's a bit of a backlog, but we believe that the

22   government will be prepared to put on its case by January 11th.

23   We have already had one lengthy adjournment of the trial date

24   in this case.  That was from April of last year -- or I guess

25   April of this year to January of 2021.  And so we think it's

KAFLFOWC

1    appropriate to move forward with the trial date.

2           And in either event, we would like clarity to the

3    extent possible.  I know that there are a lot of moving parts

4    for the Court to deal with, but prepping this trial will be a

5    significant undertaking, including witnesses in various places

6    around the country.  So the sooner we know, obviously the more

7    useful it is for us.

8           THE COURT:  Okay.  Let me hear from defense counsel.

9           MR. ROSENBLUM:  This is Mr. Rosenblum.

10          MR. MCGOVERN:  Your Honor, our view is that we need

11   the case to be adjourned from January.  We have not been able

12   to do anything toward preparation of the case over the last

13   several months because of the pandemic and the situation.

14          The one thing that is important to note about this

15   case is that, other than perhaps a phone call that was made

16   into the Southern District allegedly at some point toward the

17   very end of this alleged conspiracy, nothing in this case

18   occurred in the Southern District of New York, the New York

19   City metropolitan area.  The last superseded count occurred

20   generally in LA, and Phoenix, and in Las Vegas, the facts

21   surrounding those.  The underlying counts themselves started in

22   -- the first round of counts started in Portugal and went from

23   there to Arizona.  So it is really, really important for us,

24   and our ability to call witnesses, to be able to have access to

25   witnesses both that they we want to investigate on the

KAFLFOWC

government side but also that we may want to call ourselves.

So, for instance, we have witnesses who were personally involved in the very beginning of this conspiracy who reside in Portugal.  Right now Portugal -- you know, we've done some basic checking with the embassies and that sort of situation.  Portugal, I believe, is in worse shape than the U.S.  The ability for one to get a Visa at this point is very, very difficult; short of, I think, like severe humanitarian concerns.  And then domestically, we have a list that is extremely malleable of states of which one travels for which you have to have a 14-day quarantine.  I know that Mr. Rosenblum is currently on that list.  His name is on that list. So if he were to come here, he would have to quarantine for two weeks before he could even get here or walk into the courthouse.

So it's unfortunate.  I mean, it's a very, very difficult time for everybody.  I don't know what the Southern District list is that's operating in the background.  I suspect that Mr. Fowler's case would not be on it, being he is a, you know, nonincarcerated defendant whose case by comparison is probably relatively new.  And so we would ask the Court, perhaps because there is so much uncertainty here as to where we will be, perhaps change that trial date into a control date so that, come January of 2021, we can perhaps have a more informed conversation of what it would take to try a case like

KAFLFOWC

this in the Southern District courthouse.  I know that there
are other trials that have started.  I don't know how that's
doing or what the future holds for those cases.

         And then I would just add that we're still -- we've
been in communication with the government, and they've been
very responsive to our questions and issues that have come up.
But one of the things they just revealed to us is that there is
a fair amount of discovery that they plan to turn over that
they haven't turned over yet.  So it's not like the case is
particularly ripe for trial right now, but given the
circumstances, our ability to call witnesses, to even have our
lawyers here, are going to be extremely, you know, hampered by
the unfortunate existence of this pandemic that, you know,
obviously it's none of our fault.

         THE COURT:  Okay.  It seems to me that it makes sense
to perhaps convert that trial date to a status conference date.
Obviously, Mr. Fowler has a right to seek a speedy trial.  But
since defense counsel's indicating that they need more time to
prepare for trial, that coupled with this COVID-19 pandemic, I
think it makes sense to postpone the trial.  Mr. Fowler is out
of custody, and there is a backlog of cases.  And obviously
criminal cases in which there are defendants in custody will
take priority over Mr. Fowler's case.  But in any event,
defense counsel has indicated they need more time.  We have a
limited number of courtrooms under which under the existing

KAFLFOWC

circumstances we'd be able to try this case anyway, because we
need to make sure that the jurors can be socially distant from
each other.  My courtroom is not one of those courtrooms.  And
as the government has indicated, we'd have to get on a list.
And I think the submission date for that list is next month.
So it seems to me that it makes sense to convert the
January 11th date to a status conference date.  We may have a
clearer sense hopefully by then as to where we are with the
availability of courtrooms and where the defense is in terms of
their preparation.

        The other thing I will just ask I guess is, at one
point there was almost a resolution of this case.  And my
recollection is there were some issues regarding forfeiture
that was one of the main issues at that time.

        Have there been any other discussions regarding that?
Because it does seem to me that if, for example, that is the
sticking point, it certainly is possible that perhaps there
could be a resolution with or without an agreement with the
government and the issue of forfeiture could be dealt with
later, could be dealt with by the Court if Mr. Fowler wanted to
waive any right to a jury trial on the forfeiture issue.  But
let me just find out.  Have there been any thoughts about that
or discussions about that?  Just without getting into the
details of any of those discussions.

        But have there been any discussions about that between

KAFLFOWC

1    the parties starting with counsel for the defense?

2                 MR. MCGOVERN:  No, your Honor.  And this isn't a

3    detail.  The original plea agreement was predicated on a

4    complete acceptance of the forfeiture analysis by the Southern

5    District, which we disagreed with.  And so, frankly, that's

6    what blew up the deal, okay, was their mandate that he accept

7    that.  But since that time, as you know, they superseded the

8    indictment.  So it seems that more oral conversations in that

9    regard just disappeared.

10                If the AUSA needs to correct me, feel free to do so.

11                THE COURT:  Okay.  Counsel for the government?

12                Counsel for the government, you're on mute.  We can't

13   hear you.

14                MR. SWETT:  My apologies, your Honor.  This is AUSA

15   Swett.

16                And what Mr. McGovern said is largely accurate.  We

17   extended a plea at the beginning of this year.  It didn't go

18   through.  And since then, we superseded.  And we have not

19   extended an offer since then, and there are not ongoing

20   discussions at this point.

21                THE COURT:  Okay.  Thank you.  That's helpful.

22                I guess my question then again is -- I don't know.

23   Obviously Mr. Fowler has a right to a trial.  And we can

24   certainly hopefully schedule that at some point.  But

25   obviously, Mr. Fowler could plead guilty without an agreement

KAFLFOWC

1    with the government, could plead to the indictment if that's

2    something he chose to do.  And we could still deal with the

3    issue of forfeiture later if that is the sticking point.  If

4    there are other sticking points, then that's fine.  But I don't

5    know if there's been any thought about that from defense

6    counsel.

7              Do you have anything you want to share about that at

8    this time, defense counsel?

9              MR. MCGOVERN:  Judge, the only thing I would share on

10   that front is there was always this looming wire fraud count

11   out there that has been, you know, superseded into the

12   indictment.  And to the extent that that option was available

13   to us, we were -- we were -- I'm pretty sure we were told that

14   that option wouldn't be available to us because they would just

15   supersede with this other piece of the case.  But I don't want

16   to speak for the government.  And if I'm not being clear, I can

17   try and offer more clarity.

18             THE COURT:  I guess -- I guess -- let me just say

19   this.  Again, I don't want to get involved in any plea

20   negotiations, but I guess this isn't necessarily relevant to

21   negotiations.

22             Hypothetically speaking, Mr. Fowler, without agreeing

23   to anything with the government, could plead guilty to all of

24   the counts in the indictment and still we could deal with

25   forfeiture later.  I suppose he'd have a right to a jury trial

KAFLFOWC

simply on the issue of forfeiture or he could waive -- the

parties could waive any jury trial on that and I could decide

the issue of forfeiture if forfeiture is the sticking point.  I

don't know -- if that is the only sticking point, I don't know

how efficient it would be to have a jury trial on these other

issues if that's not the sticking point.  Obviously, he has a

right to a jury trial, and the government would be required to

prove guilt beyond a reasonable doubt, and the government would

have to prove the forfeiture allegations by a preponderance of

the evidence to the jury of a bifurcated trial.  But I guess

what I'm saying is, even if the government doesn't extend any

offer, Mr. Fowler could plead to the indictment without

admitting the forfeiture allegation and there could be a

separate proceeding to deal with the forfeiture allegation.  I

guess that's what I'm trying to say, if that is the sticking

point.  If there are other sticking points, then that's fine.

          Defense counsel, you have anything you want to add

about that?

          MR. MCGOVERN:  First, Judge, thank you for the

observation.  I mean, it's really something that is definitely

something we should be considering, you know, as an option.

And frankly, we have considered these pieces as the case has

unfolded.  I think right now our sticking point is two-fold.

It's the forfeiture and the additional counts that they

threatened and then added.  And so right now, it would be a

KAFLFOWC

1   situation where we'd be pleading straight up to the money

2   transmitter charges and a bank fraud for which we would argue

3   there's no loss.  But then there's, of course, this other

4   additional count that's been added.  And I think that that may

5   be our issue -- or the two issues that we're facing.  But I'm

6   happy to go back and use this time fruitfully to have those

7   conversations with Mr. Fowler and hopefully, you know, have

8   further conversations with the government.

9           THE COURT:  Okay.  Anything else from the government

10  on this?

11          MR. SWETT:  On that point, no, your Honor.

12          I do have one quick request.  And I don't know if

13  now's a good time to make it.

14          THE COURT:  Okay.  Go ahead.

15          MR. SWETT:  So, we understand that the January 11th

16  trial date for perhaps the final pretrial conference, which I

17  think is a few days before January 11th, is converted to a

18  status conference.  The government would request that the Court

19  still set a new trial date, you know, three months out from

20  January for two reasons:  First of all, I do think, you know,

21  given the logistical issues of prepping witnesses, having a

22  date in mind gives us the certainty to start doing things like

23  trying to get Visas, you know, trying to make travel

24  arrangements, things like that.  I think it's helpful for the

25  parties to have some sense of the time frame in order to deal

KAFLFOWC

1    with these logistical problems.

2              And secondly, to the extent there is a backlog of

3    cases, I think, you know, having a trial date at least sort of

4    stakes out our position in the line.  Obviously there are other

5    considerations that may move trials ahead of ours, but I don't

6    -- I think the government would prefer having a trial date on

7    the calendar for that reason.

8              THE COURT:  Okay.  Defense counsel have any position

9    on that?

10             MR. MCGOVERN:  Judge, that sounds like a reasonable

11   enough idea, with the idea that, you know, we'll see where we

12   are in January regardless.  But with that in mind, and in mind

13   of the prior discussion we just had, it would be really helpful

14   to us if the government would provide us with the discovery

15   that serves as the very basis of this wire fraud count that has

16   been added to the indictment.  If they were to provide us with

17   that, that might actually help us in all regards, either, you

18   know, having other conversations but at the same time having a

19   -- you know, being in a position to prepare our case, you know,

20   if the date's in April or the date's in March or whatever it

21   is.  I don't see any good reason in a case like this, where

22   there is no -- you know, no threat of violence or security to

23   witnesses or anything like that, why it is that they're holding

24   back all the 302s and all the information that serves as the

25   basis of one count.  And that count is as bare bones as one

KAFLFOWC

1    could make out a wire fraud count that deals with a very, very

2    complex set of facts.

3           So we would ask that, yeah, sure, if the Court's

4    inclined to set a trial date three months out from January,

5    that sounds -- you know, that sounds perfectly reasonable.  And

6    actually Mr. Swett makes a distinct point.  You know, maybe

7    it's better to nail it down now so we don't have to scramble

8    later.  And that sounds fine.  But similarly it sounds

9    reasonable -- to us anyway -- that we get the discovery that we

10   need to be prepared for whenever this trial is.  We're going to

11   get it at some point; you might as well give it to us now, and

12   that way we can have a much more informed conversation about

13   dispositions and being in a position where we can prepare for

14   trial, whenever that day comes.

15          THE COURT:  Okay.  I'm not going to order the

16   government to do that now on this call, but certainly defense

17   counsel and the government should have more conversations about

18   that offline.  If you want to submit something in writing to me

19   regarding this issue, you can.  Let's go ahead and pick a date

20   in April.

21          Can we get a date sometime in April, Tara?

22          DEPUTY CLERK:  Monday, April 12th, 2021.

23          THE COURT:  Okay.  So we'll set the trial down for

24   Monday, April 12th, 2021.  That's the trial date.  We'll see

25   what happens.  Hopefully we'll have a sense of whether or not

KAFLFOWC

1    that can actually happen in January.

2              MR. MCGOVERN:  Judge, may I add one more thing?  I'm

3    sorry.

4              THE COURT:  Yeah.  Go ahead.

5              MR. MCGOVERN:  We had contacted the government earlier

6    and told them that we were intending to make a bail application

7    to the Court, generally on the fact that Mr. Fowler has, you

8    know, very expensive legal expenses to defend these charges

9    and, you know, approximately $268 million of his money and

10   money that involved in these transactions have been frozen.

11   And then we posted the securing bail with over a million

12   dollars.  And we were going to ask for the Court to release the

13   properties that were secured so that he could handle his legal

14   expenses.  And the government said, look, we need time to look

15   into this, let us do that.  And so we are requesting -- and I

16   think jointly with the government -- if the Court could set a

17   bail hearing for next week.  And hopefully we don't need it if

18   the government and the defense are able to reach an agreement.

19             THE COURT:  Let's do this.  Let's do this instead of

20   setting a date for a bail hearing.  Let's set a date next week

21   for the filing of a joint status report, because at this point,

22   without some other earlier deadlines, it's not going to be

23   particularly helpful if we just have a bail hearing Friday and

24   I'm asked to sort of freestyle off of what's being said in

25   court on the record.  Let's get a joint status report on

KAFLFOWC

1    Friday.  And if the parties haven't reached some resolution,

2    the parties can lay out their positions in that status report

3    and then we can set a bail hearing after that if we need to.

4    Let's have a joint status report filed on Friday, the 23rd.

5              MR. MCGOVERN:  That's perfect.  Thank you, Judge.

6              MR. SWETT:  Thank you, Judge.

7              THE COURT:  I will exclude time under the Speedy Trial

8    Act from today's date until April the 12th, 2021, so that

9    defense counsel may continue to prepare for trial.  I find that

10   the interests of justice and the interests of Mr. Fowler

11   outweigh the public's interest in a speedy trial.  And I will

12   enter an order to that effect.

13             Anything else from the government today?

14             MR. SWETT:  Your Honor, two quick things very briefly.

15             First, should we prepare for a status conference on

16   January 7th, at 10:00 a.m., which was currently on the calendar

17   as the final pretrial conference?

18             THE COURT:  Let's just go ahead and make it that

19   January the 11th, which I guess was the start of the trial.

20   Let's make it January the 11th, at 10:00 o'clock a.m.

21             MR. SWETT:  Thank you, your Honor.

22             And the only other thing -- I just want to make sure

23   that the record is clear.  The government has produced

24   discovery related to Count Three, and I think what Mr. McGovern

25   was referring to was more 3500 materials, such as witness

KAFLFOWC

1    statements.  We're happy to discuss with defense counsel early

2    disclosure of those materials, but we have produced records

3    relating to the wire fraud count.  And I just didn't want that

4    misimpression left on the record.

5              THE COURT:  Okay.

6              MR. MCGOVERN:  And I agree with that.

7              THE COURT:  Anything else from the defense?

8              MR. MCGOVERN:  No, your Honor.  Thank you very much

9    for your time.

10             THE COURT:  Okay.  All right.  We're adjourned.  Take

11   care.

12             MR. MCGOVERN:  Thank you.

13                              * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25