M4PGfowP

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        19 Cr. 254 (ALC)

5   REGINALD FOWLER,

6                                        Plea
               Defendant.
7   ------------------------------x

8                                        New York, N.Y.
9                                        April 25, 2022
                                         2:00 p.m.
10

11  Before:

12              HON. ANDREW L. CARTER, JR.,

13                                       District Judge

14                           APPEARANCES

15
    DAMIAN WILLIAMS
16       United States Attorney for the
         Southern District of New York
17  SEBASTIAN SWETT
    SAMUEL ROTHSCHILD
18       Assistant United States Attorney

19  EDWARD SAPONE
         Attorney for Defendant
20

21

22

23

24

25
```

M4PGfowP

1          (The Court and all parties present remotely)

2          THE DEPUTY CLERK:  Change of plea hearing in case

3     number 19 Cr. 254,, United States v. Reginald Fowler.

4          Counsel, please state your appearances for the

5     government.

6          MR. SWETT:  Good afternoon, your Honor.  This is

7     Sebastian Swett on behalf out United States.  I have in the

8     room, special agent Todd McGee from the FBI and joining the

9     call are Assistant United States Attorneys Samuel Raymond and

10    Samuel Rothschild.

11         MR. SAPONE:  Good afternoon, your Honor.  Please

12    accept my apologies for the technical difficulties.  My name is

13    Edward Sapone, I am alone, and I represent Reginald Fowler, who

14    now has joined us by video.

15         THE DEPUTY CLERK:  Mr. Fowler, please state your first

16    and last name for the record, sir.

17         THE DEFENDANT:  Reginald Fowler.  I apologize for

18    being late.  Thank you.

19         THE DEPUTY CLERK:  Thank you.

20         THE COURT:  Good afternoon.  We're here today because

21    Mr. Fowler would like to withdraw his previously entered plea

22    of not guilty and enter a plea of guilty to all five counts of

23    the indictment.  Before we proceed, let me just make sure that

24    Mr. Fowler understands we're proceeding by videoconference due

25    to the COVID-19 pandemic and also due to the fact that there is

M4PGfowP

1    a trial date approaching quickly.

2            Do you waive your appearance in an actual courtroom

3    for purposes of this call?

4            THE DEFENDANT:  Yes, sir, your Honor.  I do.

5            THE COURT:  Anything else from defense counsel on

6    that?

7            MR. SAPONE:  No.  Thank you, your Honor.

8            THE COURT:  Anything else from the government on that?

9            MR. SWETT:  No, your Honor.

10           THE COURT:  Mr. Fowler, I'm going to ask you some

11   questions and your answers will be under oath.  I'm going to

12   ask my talented deputy to place you under oath.

13           (Defendant sworn)

14           THE COURT:  Mr. Fowler, now that you have taken an

15   oath to tell the truth, I want to make sure you understand, if

16   you with to intentionally lie in response to any of my

17   questions, you could face criminal prosecution for making false

18   statements under oath.

19           Do you understand?

20           THE DEFENDANT:  Yes, sir, your Honor.

21           THE COURT:  How old are you?

22           THE DEFENDANT:  I'm 63, your Honor.

23           THE COURT:  How far did you go in school?

24           THE DEFENDANT:  I've got a master's degree in

25   business, sir.

M4PGfowP

1          THE COURT:  Have you recently been under the care of a

2    physician or a psychiatrist for any reason?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  In the last 24 hours, have you had any

5    medication, pills, drugs or alcoholic benches?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Is your mind clear as you sit here today?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Defense counsel, have you discussed the

10   matter of pleading guilty with your client?

11         MR. SAPONE:  Yes, extensively, your Honor.

12         THE COURT:  Do you feel that he understands the nature

13   of the rights that he would be waiving by pleading guilty?

14         MR. SAPONE:  Very much so, your Honor.  Yes.

15         THE COURT:  Do you have any doubts about his

16   competence to proceed?

17         MR. SAPONE:  No, your Honor.

18         THE COURT:  I will note for the record that Mr. Fowler

19   appears alert, he has answered the questions appropriately.  I

20   find that he is competent to proceed.  We will continue.

21         Mr. Fowler, you have a constitutional right to plead

22   not guilty to the five counts of the indictment.

23         Do you understand?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  If you persist in that plea or not guilty,

M4PGfowP

1   you have a right to a speedy and public trial by jury.

2            Do you understand?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  At that trial and at every stage of this

5   criminal litigation, you have a right to be represented by an

6   attorney.

7            Do you understand?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  If you could not afford to hire your own

10  attorney, the Court would give you your own attorney for free.

11           Do you understand?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Counsel, I believe that you are retained

14  on this matter.  Is that correct?

15           MR. SAPONE:  Yes, your Honor is correct.

16           THE COURT:  At trial, you would be presumed innocent.

17  You would not have to prove that you are innocent.

18           Do you understand?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  The burden of proof would be on the

21  government at all times and the government would be required to

22  prove each and every element of the crimes charged beyond a

23  reasonable doubt in order for the jury to convict you of those

24  crimes.

25           Do you understand?

M4PGfowP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Let's turn to those elements.

3          Count One charges you with a conspiracy to commit bank

4    fraud.

5          Do you understand?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Count Two charges you with the substantive

8    offense of bank fraud.

9          Do you understand?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  So let's turn to the elements of Counts

12    One and Two.  For Count One, the government would have to prove

13    that you knowingly and willfully conspired to commit bank

14    fraud.

15          Do you understand?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  That means that you knowingly, willfully

18    and intentionally entered into an agreement with at least one

19    other person to commit bank fraud.

20          Do you understand?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  The government would have to prove that

23    you knew the purpose of that agreement was to commit bank

24    fraud.

25          Do you understand?

M4PGfowP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  The elements of bank fraud that the

3    government would have to prove include the following:  That you

4    willfully and knowingly executed or attempted to execute a

5    scheme and artifice to defraud a financial institution.

6          Do you understand?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And that financial institution was a bank,

9    meaning that the deposits of that financial institution were

10   then insured by the Federal Deposit Insurance Corporation.

11         Do you understand?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And that part of this scheme was to obtain

14   money, funds, credits, securities and other property owned by

15   and under the custody and control of that financial

16   institution.

17         Do you understand?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  And that the scheme was to obtain this

20   money or these funds by means of false and fraudulent

21   pretenses.

22         Do you understand?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  For Count One specifically, that you

25   opened numerous US-based business bank accounts at several

M4PGfowP

1    different banks, and in opening and using these accounts, you

2    falsely represented to those banks that the accounts would be

3    primarily used for real estate investment transactions.

4              Do you understand?

5              THE DEFENDANT:  Yes, sir, your Honor.

6              THE COURT:  Even though you knew that the accounts

7    would be used to transmit funds on behalf of an unlicensed

8    money transmitting business related to the operation of crypto

9    currency exchanges.

10             Do you understand?

11             THE DEFENDANT:  Yes, sir, your Honor.

12             THE COURT:  If you plead guilty to any of these

13   counts, one through five, you will be giving up your right to

14   challenge the venue of the prosecution.

15             Do you understand?

16             THE DEFENDANT:  Yes, sir, your Honor.

17             THE COURT:  Counsel for the government, have I left

18   out any elements of Count One?

19             MR. SWETT:  No, your Honor.  I think you have covered

20   the elements for both Count One and Count Two.

21             THE COURT:  Again, Count Two is the substantive crime

22   of bank fraud.  Count One is the charge for conspiracy to

23   commit bank fraud.

24             Do you understand?

25             THE DEFENDANT:  Yes, your Honor.

M4PGfowP

1          THE COURT:  Again, for Count Two the government would

2     need to prove those other elements for bank fraud.

3          Do you understand?

4          THE DEFENDANT:  Yes, sir, your Honor.

5          THE COURT:  Now, let's turn to Counts Three and Four.

6          Count Three charges a conspiracy to operate an

7     unlicensed money transmitting business.  Count Four charges the

8     substantive offense of the operation of an unlicensed money

9     transmitting business.

10          Do you understand?

11          THE DEFENDANT:  Yes, sir, your Honor.

12          THE COURT:  For Count Three, again, the government

13     would have to prove a conspiracy, meaning that you knowingly,

14     intentionally and willfully entered into an agreement with at

15     least one other person to commit the substantive offense, in

16     this case, operation of an unlicensed money transmitting

17     business.

18          Do you understand?

19          THE DEFENDANT:  Yes, sir, your Honor.

20          THE COURT:  The government would have to prove that

21     you entered into that conspiracy or agreement understanding

22     that the purpose and object of that agreement was to operate an

23     unlicensed money transmitting business.

24          Do you understand?

25          THE DEFENDANT:  Yes, sir, your Honor.

M4PGfowP

| | |
|---|---|
| 1 | THE COURT:  Let's turn to the substantive offense of |
| 2 | operating an unlicensed money transmitting business.  The |
| 3 | government would have to prove beyond a reasonable doubt that |
| 4 | you conducted, controlled, managed, supervised or directed all |
| 5 | or part of an unlicensed money transmitting business that |
| 6 | affected interstate and foreign commerce. |
| 7 | Do you understand? |
| 8 | THE DEFENDANT:  Yes, your Honor. |
| 9 | THE COURT:  And the government would have to prove |
| 10 | that that money transmitting business was unlicensed, it was |
| 11 | not registered. |
| 12 | Do you understand? |
| 13 | THE DEFENDANT:  Yes, your Honor. |
| 14 | THE COURT:  For Count Three, for that conspiracy, the |
| 15 | government would also have to prove an overt act.  The |
| 16 | government would have to prove that, in furtherance of the |
| 17 | conspiracy, that on or about August 8th, 2018 you opened an |
| 18 | account with a bank in Manhattan, New York for the purpose of |
| 19 | conducting an unlicensed money transmitting business. |
| 20 | Do you understand? |
| 21 | MR. SAPONE:  Your Honor, I'm so sorry to interject. |
| 22 | Would the Court accept instead of opened an account on that |
| 23 | date, used an account on that date for the purpose of |
| 24 | furthering the money transmitting business.  Would it be okay |
| 25 | if he used the account? |

M4PGfowP

| | |
|---|---|
| 1 | THE COURT:  I believe that that would be okay.  The |
| 2 | government has to prove an overt act. |
| 3 | Let me hear from government on that. |
| 4 | MR. SWETT:  Your Honor, we're fine with that.  I think |
| 5 | we're going to get to a more fulsome allocution at some point |
| 6 | during this plea.  Certainly, the overt act alleged in the |
| 7 | indictment is one of many that we believe occurred in this |
| 8 | case.  And we're fine with the representation and the request |
| 9 | made by Mr. Sapone. |
| 10 | THE COURT:  Have I left out any elements of Count |
| 11 | Three, counsel for the government? |
| 12 | MR. SWETT:  No, your Honor. |
| 13 | THE COURT:  Counsel for the defense. |
| 14 | MR. SAPONE:  No, your Honor. |
| 15 | THE COURT:  Count Four, again, is the substantive |
| 16 | offense of operation of an unlicensed money transmitting |
| 17 | business.  And we have already discussed those elements. |
| 18 | Do you understand that elements, Mr. Fowler? |
| 19 | THE DEFENDANT:  Yes, sir, your Honor. |
| 20 | THE COURT:  Count Five charges wire fraud.  For Count |
| 21 | Five, the government would have to prove that you willfully and |
| 22 | knowingly, having devised a scheme and artifice to defraud and |
| 23 | for obtaining money and property by means of false and |
| 24 | fraudulent pretenses, transmitted and caused to be transmitted |
| 25 | by means of wire, radio and television communication in |

M4PGfowP

1    interstate and foreign commerce writings, signs, signals,

2    pictures and sounds for the purpose of executing such scheme

3    and artifice.

4              Do you understand?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Specifically, that you defrauded

7    individuals associated with a professional sports league in

8    connection with your acquisition of an ownership stake in the

9    league by falsely claiming personal ownership of funds that

10   were in truth and in fact funds that you had received through

11   the unlicensed money transmitting business charged in Count

12   Four of this indictment and by converting those individual

13   funds towards your investment in the league.

14             Do you understand?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Counsel for the government, have I left

17   out any elements of Count Five?

18             MR. SWETT:  No, your Honor.

19             THE COURT:  So the government would have to prove each

20   and every one of those elements for each of those five counts

21   beyond a reasonable doubt in order for the jury to convict you

22   of those crimes.

23             Do you understand?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  In order to attempt to prove those

M4PGfowP

1    elements, the government would call witnesses.  Your attorney

2    could question those witnesses.

3              Do you understand?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Your lawyer could object to evidence that

6    the government tried to introduce against you.

7              Do you understand?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  You could call your own witnesses at

10   trial, and your attorney would have the subpoena power of the

11   United States to make witnesses come to court for you.

12             Do you understand?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  You could testify on your own behalf at

15   trial.  But at the same time, you could not be forced to

16   testify, because you have a right or privilege against

17   self-incrimination.  A right or privilege against

18   self-incrimination means you cannot be forced to say anything

19   out of your own mouth that makes you appear guilty.

20             Do you understand?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Therefore, even if you are guilty, you

23   don't have to plead guilty.  You can remain silent and force

24   the government to attempt to prove each and every element of

25   those crimes to a jury beyond a reasonable doubt.

M4PGfowP

1          Do you understand?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  If the government could not prove each and

4    every element of those crimes charged to a jury beyond a

5    reasonable doubt, the jury would have an obligation to find you

6    not guilty.

7          Do you understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Again, even if you are guilty, you are not

10   required to plead guilty.

11         Do you understand?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  If you decide to plead guilty, I will ask

14   you what you did to plead guilty.  When you answer that

15   question, you will be saying things out of your own mouth to

16   make you appear guilty, therefore giving up your right or

17   privilege against self-incrimination.

18         Do you understand?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Let's talk about the sentencing process.

21   If I accept your plea of guilty, you will meet with the

22   probation department, and the probation department will prepare

23   a probation or presentence report.  That report will have

24   information about you and the crimes that you are alleged to

25   have committed.

M4PGfowP

1                  Do you understand?

2                  THE DEFENDANT:  Yes, your Honor.

3                  THE COURT:  That report will also have the probation

4      department's sentencing guideline calculation.  Have you and

5      your attorney discussed the sentencing guidelines and how they

6      might apply in your case?

7                  THE DEFENDANT:  Yes, your Honor.

8                  THE COURT:  The sentencing guidelines are advisory.

9      What that means is, although I'm required to determine the

10     guideline range that applies to your case, once I make that

11     determination, I'm not required to sentence you within that

12     range.

13                 Do you understand?

14                 THE DEFENDANT:  Yes, sir, your Honor.

15                 THE COURT:  Since I will determine the guideline range

16     that applies to your case and I will determine your sentence,

17     as you sit here today, there is no promise as to what your

18     guideline range will be, nor is there a promise as to what your

19     sentence will be.

20                 Do you understand?

21                 THE DEFENDANT:  Yes, sir, your Honor.

22                 THE COURT:  Let's talk about the statutory penalties

23     that apply.  For each of these counts, there are statutory

24     maximums relating to imprisonment.  There are also statutory

25     penalties related to supervised release.  And there are

M4PGfowP

1    monetary penalties.

2              Do you understand?

3              THE DEFENDANT:  Yes, sir, your Honor.

4              THE COURT:  So let's start off talking about the

5    statutory penalties for imprisonment.  The statutory penalties

6    for imprisonment and supervised release are the same for Counts

7    One and Two; okay?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  So for Counts One and Two, each carries a

10   maximum term of imprisonment of 30 years.

11             Do you understand?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Each carries a maximum term of supervised

14   release of five years.

15             Do you understand?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Supervised release is like a term of

18   probation you would serve after a term of custody.  You would

19   be subject to drug testing, visits to a probation officer's

20   office and other limitations on your freedom.

21             Do you understand?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  If you were to violate a condition of

24   supervised release, you could be sentenced to an additional

25   term of custody and an additional term of supervised release

M4PGfowP

1     without credit for time previously served in custody or on

2     supervised release.

3               Do you understand?

4               THE DEFENDANT:  Yes, sir.

5               THE COURT:  Now, let's turn to Counts Three and Four.

6     In terms of the penalties for imprisonment and supervised

7     release, those are the same for Counts Three and Four, the same

8     as each other.

9               For Counts Three and Four, there's a maximum term of

10    imprisonment of five years.

11              Do you understand?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  There's a maximum term of supervised

14    release of three years.

15              Do you understand?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  For Count Five, there's a maximum term of

18    imprisonment of 20 years.

19              Do you understand?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  And a maximum term of supervised release

22    of three years.

23              Do you understand?

24              THE DEFENDANT:  Yes, sir.

25              THE COURT:  Now, let's turn to the financial

M4PGfowP

1    penalties.  The financial penalties for Counts One and Two are

2    the same.  Here are the financial penalties for Counts One and

3    Two:  You are subject to the possibility of a fine.  The

4    maximum fine is the greatest of $1 million or twice the gross

5    pecuniary gain derived from the offense or twice the gross

6    pecuniary lost to persons other than you resulting from the

7    offense.

8              Do you understand?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  For Counts Three, Four and Five, those

11   monetary penalties are the same.

12             Do you understand?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  For Counts Three, Four and Five, you're

15   subject to a fine.  The maximum fine is the greatest of

16   $250,000 or twice the gross pecuniary gain derived from the

17   offense or twice the gross pecuniary loss to persons other than

18   you resulting from the offense.

19             Do you understand?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  For all of the counts, one through five,

22   you are subject to a mandatory special assessment which is like

23   a fine, except it is mandatory.  I must impose that special

24   assessment whether or not you can afford to pay it.  The

25   special assessment for each of the five counts is $100 each, so

M4PGfowP

1 | a total of $500 worth of special assessments.

2 |            Do you understand?

3 |            THE DEFENDANT:  Yes, sir, I do.  Yes, sir.

4 |            THE COURT:  Counsel for government, have I left out

5 | anything regarding the statutory penalties?

6 |            MR. SWETT:  Your Honor, there may also be restitution

7 | with respect to Counts One, Two and Five.  And the government

8 | is seeking forfeiture in this case.

9 |            THE COURT:  Thank you.

10 |            Mr. Fowler, there's also the possibility of

11 | restitution for Counts One, Two and Five.

12 |            Do you understand?

13 |            THE DEFENDANT:  Yes, sir.

14 |            THE COURT:  There's a strong possibility of

15 | restitution.

16 |            Do you understand?

17 |            THE DEFENDANT:  Yes, sir.

18 |            THE COURT:  In addition, the government will be

19 | seeking forfeiture.

20 |            Do you understand that?

21 |            THE DEFENDANT:  Yes, sir.

22 |            THE COURT:  Counsel for the government, are there any

23 | other statutory penalties that I have left out?

24 |            MR. SWETT:  No, your Honor.  Thank you.

25 |            THE COURT:  Counsel for the defense, have I left out

M4PGfowP

1   any of the statutory penalties?

2            MR. SAPONE:  No, your Honor got it right.  Thank you.

3            THE COURT:  You have a statutory right to appeal.

4            Do you understand?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  I want to make sure that you understand

7   that if you are not a United States citizen, your guilty plea

8   and conviction make it very likely that you be deported from or

9   removed from the United States.

10           Do you understand?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Have you discussed this with your

13  attorney?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Defense counsel, have you in fact

16  discussed that with your client?

17           MR. SAPONE:  Yes, your Honor.  I didn't stress it as I

18  did other things because I know that he was born in the United

19  States and is a US citizen.  But I did tell him if he's not,

20  then he'd be subject to deportation, which will not be an issue

21  here.  But thank you, your Honor.

22           THE COURT:  Mr. Fowler, do you have any questions for

23  me before we continue?

24           THE DEFENDANT:  No, sir.  I do have a question, you

25  indicated that the maximum term is 30 years for Counts One and

M4PGfowP

1    Two, is that 30 plus 30 or is it 30 total?

2              THE COURT:  There is a possibility that all of these

3    counts could be run consecutively.  So yes, it is possible 30

4    plus 30, yes.  The maximum term of imprisonment you could face

5    is 90 years.

6              Do you understand?

7              THE DEFENDANT:  Your Honor, I'll say something that's

8    probably out of turn.  I don't really have the right to say

9    what I want to say because I'm guilty just by being here.

10             MR. SAPONE:  Excuse me.

11             THE COURT:  Hold on.  You may want to speak to your

12   lawyer.  Again, Mr. Fowler, there is no promise as to what your

13   sentence will be.  I have an obligation to make sure you

14   understand the maximum amount of imprisonment that you could

15   face.

16             Do you understand?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Defense counsel.

19             MR. SAPONE:  No, it's okay, your Honor.  We're okay.

20   Thank you.

21             THE COURT:  Mr. Fowler, I'll ask you again, do you

22   have any questions for me?

23             THE DEFENDANT:  No, sir, your Honor.  Thank you.  I

24   apologize.

25             THE COURT:  Do you have any questions you would like

M4PGfowP

1    to ask your attorney in private before we continue?

2              THE DEFENDANT:  No, sir, your Honor.  Thank you.

3              THE COURT:  Let me also confirm, the government sent a

4    letter to your attorney laying out the statutory penalties.

5    Have you in fact reviewed that with your attorney, Mr. Fowler?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Mr. Fowler, are you satisfied with your

8    legal representation up to this point?

9              THE DEFENDANT:  Yes, sir.  Thank you, your Honor.

10             THE COURT:  Defense counsel, are you aware of any

11   legal defense to the charges or any other reason why your

12   client should not plead guilty?

13             MR. SAPONE:  No, your Honor.

14             THE COURT:  Mr. Fowler, are you willing to give up

15   your rights to a trial and all of the other rights that we have

16   discussed?

17             THE DEFENDANT:  Yes, sir, your Honor.

18             THE COURT:  Has anyone made any promises to induce you

19   to give up those rights?

20             THE DEFENDANT:  No, sir, your Honor.

21             THE COURT:  Has anyone threatened you or attempted to

22   force you to give up those rights?

23             THE DEFENDANT:  No, sir, your Honor.

24             THE COURT:  How do you plead to Counts One through

25   Five of the indictment; guilty or not guilty?

M4PGfowP

1           THE DEFENDANT:  Guilty, your Honor.

2           THE COURT:  What is it you did that makes you guilty

3   of those crimes?

4           MR. SAPONE:  Your Honor, this is Ed Sapone, so I had

5   worked on an allocution with Mr. Fowler and he had written down

6   an allocution that are his words, but I helped him to write

7   that out.  Can he read from the paper, your Honor, which,

8   again, are his words with the assistance of his counsel?

9           THE COURT:  That sounds fine to me.  Let me check.

10  Counsel for the government, any objection to that?

11          MR. SWETT:  No objection, your Honor.

12          THE COURT:  That is fine.

13          THE DEFENDANT:  (unintelligible) -- for this

14  opportunity.  This has been a long, difficult road.  I'm

15  grateful to be here today.  I want to accept responsibility in

16  the right way for what I have done; nothing more, nothing less.

17  These are my own words written with the help of Mr. Sapone.

18          On February 2018, I set up a company called Global

19  Trade Solutions, LLC, which was incorporated in Colorado.  We

20  had agreed to receive money on behalf of a Swiss bank company

21  named GTS.  My company would act as a money management business

22  charging $10 per transaction.  I anticipated doing up to 2,000

23  transactions each month, which would equal 20,000 each month in

24  transaction fees alone.

25          Beginning in February of 2018, I opened multiple

M4PGfowP

business bank accounts and used multiple bank accounts in the
United States, one of which was in Manhattan.  During an
eight-month period of time, from February to September, my
company, Global Trade Solutions, transacted business with GTS,
SA.  My company solicited, deposited and caused the monies from
GTS, SA and GTS customers.

Initially, my company, with the use of bank accounts I
just mentioned to you, would act as a money management
business.  We also had a goal of subsequently investing some of
the money into real estate deals.  I had a lot of experience
doing real estate.

Since 1992, I have built more than 52 buildings and
more than 300,000 square feet of commercial or residential
building.  Some of my clients have included American Express,
Disney and the University of Phoenix.  At no point in time have
I ever been an expert in crypto currency.  In fact, to this
day, I know very little about it.

In the relevant time period of February 2018 through
September 2018, I also conducted my regular real estate
development and property management business, in which I built
buildings and managed properties.  In the beginning, in
November 2017, when I met and talked to GTS, SA, I did not know
they were dealing in digital assets, also known as crypto
currency.  My understanding at times during the relevant time
period was that all the money that went through bank accounts

M4PGfowP

1    that I opened for my company, Global Trade Solutions, to

2    conduct business with GTS, SA fully, lawfully earned, clean

3    money.  Also in every year, I filed accurate income taxes for

4    Global Trade Solutions and every company I own and personally.

5    I have always paid my taxes and I have accounted for every

6    penny in these transactions legally.

7         I will now read to you my own words with the help of

8    Mr. Sapone, which is what I did that made me guilty of the five

9    counts, one through five.

10        As to Count One, conspiracy to commit bank fraud,

11   during the eight-month period of time, from February through

12   September 2018, I, along with others, engaged in bank fraud

13   conspiracy.

14        Here's what we agreed to do:  Open business accounts

15   with one of my companies, Global Trade Solutions, which I refer

16   to GTS LLC, in the United States based banks.  And those bank

17   accounts had a bank account located in Manhattan, knowing that

18   one of GTS LLC's customers would be depositing money --

19   (unintelligble) -- crypto currency.  We misled the banks by

20   telling --

21        THE COURT:  Hold on a second, Mr. Fowler, can you

22   repeat that.  You faded out for a second.

23        THE DEFENDANT:  Knowing that one of GTS LLC's

24   customers and the customers would be depositing monies into

25   those bank accounts that would be derived from digital assets,

M4PGfowP

1  also known as crypto currencies.  Yet, we misled the banks by

2  telling them that the business I was involved in and the money

3  that would flow through the accounts was rooted only from my

4  real estate transactions.  I accept full responsibility.  I

5  know that during this time period, 2018, that I was also

6  conducting real estate transactions is not an excuse.  It's

7  also not an excuse when I first began negotiations with GTS I

8  did not know that they would be causing crypto currency

9  deposits to occur.  In addition, to having engaged in an

10  unlawful agreement, I committed an overt act of opening and

11  using the banks.  I engaged in unlawful agreement and an overt

12  act with knowledge and I am deeply sorry.  I'm really sorry,

13  more than you know.

14          At the same time, eight months, during the -- I'm

15  sorry, your Honor.

16          THE COURT:  Go ahead, continue.

17          THE DEFENDANT:  During the same month time period,

18  February to September, during which I had engaged in bank fraud

19  that I described, I also engaged in substantive bank fraud and

20  business accounts and US-based banks and used them and used a

21  bank account in a Manhattan bank and allowed and allowed and

22  caused to be deposited funds on behalf of an unlicensed money

23  transmitting business, a business that was not licensed in the

24  United States to act as a money transmitting business related

25  to the operation of digital assets, also known as crypto

M4PGfowP

1    currency exchange.  I'll refer to these as crypto deposits.

2         I also represented to the banks that the accounts

3    would be used only to conduct real estate deals.  While I did

4    do real estate deals, I knowingly and intentionally hid from

5    the bank the fact that I was allowing and causing crypto

6    deposits to run through the bank accounts.

7         Finally, I agree that the deposits into most of these

8    accounts were insured by the Federal Deposit Insurance

9    Corporation, FDIC.

10        As to Count Three, conspiracy to operate an unlicensed

11   money transmitting business.  During the same eight-month

12   period of time, from February through September, I committed a

13   crime against the United States by conspiring and agreeing with

14   others to operate an unlicensed money transmitting business.

15        I will now explain the agreement.  In connection with

16   the operation of unlicensed business, I agreed with others to

17   cause funds derived from digital assets, also known as crypto

18   currency, to be deposited and transferred out of the bank

19   accounts I described above.  I knew that I was operating a

20   business, a money transmitting business.  I knew it was not

21   licensed in the United States.

22        On August 8th, 2018, I used a bank account, a bank

23   located in Manhattan for the purpose of conducting this money

24   transmitting business.  The fact that a company I operated

25   during the relevant time period was authorized to operate a

M4PGfowP

money management business is not an excuse.

Finally, I agree that the above-described business affected interstate and foreign commerce.

As to the fourth count, operating an unlicensed money transmitting business, during the same eight-month period of time, I engaged in the substantive offense of operating an unlicensed money transmitting business.  As part of my offense, I allowed and caused funds derived from digital assets, known as crypto currency, to be deposited into and transmitted into and out of the US-based accounts I described above.  I knew that I was operated a business, a money transmitting business, and I know it was not licensed in the United States.  On August 8th, 2018 used the above-mentioned account for purposes of conducting this money transmitting business.  Finally, I agree that the business was affecting interstate and foreign commerce.

As to Count Five, wire fraud, during the eight-month period of time, from June 2018 to February 2019, I acquired an ownership interest in a professional sports league, in part by making false representations to individuals associated with the league, which I knew were false, which I made to get to let them to allow me to invest in the league.  Specifically, I represented that certain funds in the Manhattan bank account were my personal funds, when in fact I obtained the funds through funds of my company's, GTS LLC, customers and its

M4PGfowP

1    customers.  As explained above, when I adjudicated to Count

2    Four of the superseding indictment, part of my communications

3    with these people and to whom I had made these representations

4    or -- (unintelligble)

5           THE COURT:  Hold on.  Mr. Fowler, you cutout there for

6    a second.  Can you go back another sentence or two, you just

7    cutout there for a second.

8           THE DEFENDANT:  My communications with these people to

9    whom I had made representations -- (unintelligible)

10          THE COURT:  Hold on.  You are coming in and out.

11          MR. SAPONE:  Your Honor, can I submit that we try it

12   one more time and if it doesn't work, I would like to submit an

13   idea to the Court, please.

14          THE COURT:  Back it up, Mr. Fowler.  Try it again.

15          Are you on a telephone or what are you on, Mr. Fowler,

16   or a computer?

17          THE DEFENDANT:  Phone.

18          THE COURT:  Maybe take the phone off of speaker and

19   hold it up no your ear and your mouth and try it that way.

20          You are fading in and out.  We can't hear you,

21   Mr. Fowler.

22          MR. SAPONE:  Your Honor, if we could ask him, please,

23   to try again.  If it doesn't work, I would like to make a

24   suggestion to your Honor.

25          THE COURT:  Okay.

M4PGfowP

1          MR. SAPONE:  Reggie, would you be kind enough to start

2     where it says "part of my communications."  Try again, Reggie.

3          THE DEFENDANT:  Part of my communications with these

4     people who I made representations -- (unintelligible)

5          THE COURT:  It's still fading in and out.  We still

6     can't really hear him clearly.  What is your suggestion,

7     counsel?

8          MR. SAPONE:  Your Honor, we're at the end of the

9     allocution, could I just allocute him and he could answer yes,

10    no or whatever he wants to answer?  Could we do that for the

11    very last part here?

12         THE COURT:  Counsel for the government, do you have

13    any objection to that?

14         MR. SWETT:  Your Honor, I think that we can do that.

15    Another alternative would be for Mr. Fowler to dial in using a

16    telephone line, which may give a clearer signal because,

17    obviously, having Mr. Sapone allocute him is not our

18    preference.

19         THE COURT:  I tend to agree with the government.

20         The other thing is I just got an email that --

21    Mr. Fowler, are you still there?

22         THE DEFENDANT:  I'm still here, your Honor.  Yes, sir.

23         THE COURT:  Well, now we can hear you.  Can you give

24    us a testing one, two, three.

25         Now, you just faded out again.

M4PGfowP

1          THE DEFENDANT:  Testing -- three.

2          THE COURT:  We're not getting everything clearly.

3     We're hearing a testing and a three, but not the one and the

4     two.

5          Can you hear me, Mr. Fowler?  Mr. Fowler, can you hear

6     me?

7          THE DEFENDANT:  Yes.  I can hear you.  Yes.

8          THE COURT:  So let me just also state this.  I got an

9     email that the court reporter, Ms. Herbert, has indicated that

10    she has a personal attorney-client relationship with

11    Mr. Sapone.  Again, she says it won't have any affect on her

12    ability to keep the record, but wanted to disclose it in an

13    abundance of caution.

14         Let me just confirm with Mr. Sapone that this

15    attorney-client relationship that you have with Ms. Herbert has

16    nothing to do with this case.

17         MR. SAPONE:  Your Honor, this is Ed Sapone.  It has

18    nothing to do with this case.  And I want you to know that I

19    didn't even realize that Sadie was the court reporter today.

20    It has nothing to do this case.  It presents no conflict,

21    and I see no reason why we can't continue with Ms. Herbert as

22    our court reporter.

23         THE COURT:  Counsel for the government.

24         MR. SWETT:  I have to admit, your Honor, this is

25    something I have never encountered before.  I am okay with the

M4PGfowP

1    representations from Mr. Sapone and from Ms. Herbert that this

2    does not affect their work, so I don't have an objection with

3    proceeding.

4          THE COURT:  Mr. Fowler, can you hear me?  Did you hear

5    everything I said?

6          THE DEFENDANT:  Yes, sir, I did.

7          THE COURT:  Do you have any objection to Ms. Herbert

8    continuing as the court reporter?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  I think that's fine.  And Ms. Herbert, let

11    me just ask you to stop taking the record for a second.

12          (Pause)

13          THE COURT:  Mr. Fowler, can you give us a testing one,

14    two, three.

15          THE DEFENDANT:  Testing one, two --

16          THE COURT:  Almost there.  I think it makes sense,

17    Mr. Fowler, for us to ask you to call in on the audio line.  Do

18    you know how to do that, Mr. Fowler?

19          Why don't we wait for Mr. Fowler to do that.

20          (Pause)

21          THE DEPUTY CLERK:  Mr. Fowler you should hang up the

22    videoconferencing portion of the call and just proceed by

23    phone.

24          THE DEFENDANT:  I have already done that.  Thank you.

25          THE DEPUTY CLERK:  Thank you.

M4PGfowP

1          Judge, I believe we're ready to continue, if you are

2   ready.

3          THE COURT:  Mr. Fowler, give us a testing one, two,

4   three.

5          THE DEFENDANT:  Testing one, two, three.

6          THE COURT:  We can hear you now.  Now we can't see

7   you.

8          Let me confirm, for the record, Mr. Fowler, do you

9   consent to proceeding through audio means only for the rest of

10  this guilty plea?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Defense counsel, do you waive your

13  client's video appearance for the remainder of this call?

14         MR. SAPONE:  Yes.  And we appreciate the Court's

15  indulgence.  Thank you, your Honor.

16         THE COURT:  Anything else from the government on this?

17         MR. SWETT:  No.  Thank you to everyone for resolving

18  that connectivity issue.

19         THE COURT:  Go ahead and continue, Mr. Fowler.

20         THE DEFENDANT:  Part of my communication to these

21  people to whom I had made these representations were by wire or

22  email.

23         As to the forfeiture allegations of the indictment, I

24  admit them.  Mr. Sapone and I look forward to supplying the

25  Court on a later date with our view of the appropriate

M4PGfowP

1    forfeiture amounts.

2              I accept full responsibility and I'm deeply sorry.  I

3    intend to make full amends for all of this.  Judge, I

4    appreciate your patience through this long journey and the

5    respect that you have shown me to date.

6              Thank you.

7              THE COURT:  Any further allocution requested by the

8    government?

9              MR. SWETT:  Your Honor, can I have one moment, please.

10             THE COURT:  Yes.

11             MR. SWETT:  Your Honor, I realize that at various

12   points it may have been a little difficult to understand.

13   However, it did appear sufficient to the government.  I just

14   want to make sure the court reporter felt she was able to take

15   it all down so that the transcript will reflect the defendant's

16   allocution.

17             THE COURT:  Court reporter, did you get everything

18   down that was said?

19             THE COURT REPORTER:  Yes.  Anytime I could not hear

20   something, I interrupted and requested that it be repeated.

21             THE COURT:  Anything else from the government

22   regarding the allocution?

23             MR. SWETT:  Only I would proffer a couple of things.

24   First, with respect to those wire communications for Count

25   Five, they traveled in interstate, so that's a proffer that the

M4PGfowP

1    government would make.  And then in addition, we would proffer

2    our ability to establish venue on all five counts.

3              THE COURT:  Anything else from defense counsel on

4    that?

5              MR. SAPONE:  We appreciate the government's proffer,

6    and we have nothing to add.

7              Thank you.

8              THE COURT:  Mr. Fowler, did you hear what the

9    government said?

10             THE DEFENDANT:  Yes, I did, your Honor.  Yes, sir.

11             THE COURT:  Again, regarding the court reporter, if I

12   didn't say this, I believe that this is fine.  This conflict is

13   not a conflict that would prevent this court reporter from

14   serving as the court reporter on this case.  Mr. Sapone's

15   representation of her has nothing to do with this case.  In the

16   role of court reporter, it is her obligation to take down

17   everything that is said.  This is not a situation in which she

18   would be exercising judgment regarding what would be included

19   and what would not be included.  So I have no doubt that there

20   is no conflict and that this is fine.

21             Anything else from the government on that?

22             MR. SWETT:  No.  Thank you, your Honor.

23             THE COURT:  Anything else from defense counsel on

24   that?

25             MR. SAPONE:  No.  Thank you, your Honor.

M4PGfowP

1          THE COURT:  Anything else from Mr. Fowler regarding

2     that?

3          THE DEFENDANT:  No.  Thank you, your Honor.

4          THE COURT:  I find that Mr. Fowler understands the

5     nature of the rights that he's waiving by pleading guilty.  I

6     further find -- well, let me ask defense counsel, is there

7     anything else from defense counsel regarding the allocution

8     here?

9          MR. SAPONE:  No, your Honor.  We carefully went

10    through the elements of the five charges as well as the factual

11    portion.  Mr. Fowler has received my counsel.  He read from the

12    notes verbatim, and so I'm fully confident that we have hit all

13    the points, both legally and factually in that allocution, your

14    Honor, nothing to add.

15         MR. SWETT:  Your Honor, just a couple of things I want

16    to put on the record.  Certainly, as we mentioned, we expect

17    there will be forfeiture here.  Because there's no plea

18    agreement, there's no agreed upon forfeiture amount.  The

19    government anticipates that forfeiture would be as high as

20    $750 million, which represents the transaction volume for the

21    GTS unlicensed money services business, approximately

22    600 million of which was conducted in United States dollars.

23         And the government would just note that if this case

24    went to trial, there would be coconspirator statements as to

25    the nature of the unlicensed money services business.  There

M4PGfowP

1    would be statements from bank representatives that at the time

2    crypto currency was not generally allowed in major banking

3    institutions, which created the demand for the crypto currency

4    business with which Fowler was involved.  And we would note

5    that the misrepresentations included altering and amending wire

6    transfer information to make it appear as though certain

7    transactions were real estate transactions, when in fact they

8    were related to the unlicensed money services business.

9         Really quickly, with respect to Count Five, some of

10   those same misrepresentations as to the fact that this was real

11   estate and not crypto were present in misrepresentations to

12   members of the football league at issue here.

13        THE COURT:  Did you hear that, defense counsel?

14        MR. SAPONE:  Yes, your Honor.

15        If I just may very briefly say that the reason

16   Mr. Fowler has elected to, as we say, pursue an open plea is

17   most respectfully, he does not agree with the government's

18   theory.  And we look forward, prior to and at the time of

19   sentencing, to share our view of what actually happened.  So we

20   are not going to do it today, but look forward to that

21   opportunity in the future.

22        Thank you, your Honor.

23        THE COURT:  Just to be clear, when you are indicating

24   that you disagree with the government's theory, you're talking

25   about in terms of the theory related to forfeiture?

M4PGfowP

1          MR. SAPONE:  Yes, your Honor.

2          THE COURT:  Anything else, Mr. Fowler?

3          THE DEFENDANT:  No, sir, your Honor.

4          THE COURT:  I find that there is a factual basis for

5   the plea and I find that Mr. Fowler understands the rights that

6   he's waiving by pleading guilty.  I accept his plea of guilty.

7          Let's set a date for sentencing.

8          Do we have a date, Tara?

9          THE DEPUTY CLERK:  Tuesday, August 30th, 2022 at

10  2:00 p.m.

11         THE COURT:  I will ask that the government provide an

12  offense statement to probation within three weeks and that

13  defense counsel schedule the presentence interview within three

14  weeks.  The interview doesn't need to take place in three

15  weeks, but it needs to be scheduled between now and three weeks

16  from today.

17         Anything else from the government?

18         MR. SWETT:  No.  Thank you, your Honor.

19         THE COURT:  Anything else from defense counsel?

20         MR. SAPONE:  No.  Thank you very much, your Honor.

21         THE COURT:  We're adjourned.

22         (Adjourned)

23

24

25