

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 12, 2023

**BY ECF**

The Honorable Andrew L. Carter, Jr.
Southern District of New York
40 Foley Square
New York, New York 10007

   Re:  <u>United States v. Reginald Fowler</u>, 19 Cr. 254 (ALC)

Dear Judge Carter:

  The Government respectfully submits this letter in response to the petition for remission or mitigation of forfeiture by Shift Markets Group, Inc. et al. ("Shift Markets"), Dkt. No. 156 (the "Shift Markets Petition").

  The Court should dismiss the Shift Markets Petition, because the petition is improper and the Court does not have authority to grant the relief sought. As described below, upon obtaining a final order of forfeiture, the Government intends to request that the Department of Justice's Money Laundering and Asset Recovery Section ("MLARS") restore funds to the Alliance of American Football. Other parties claiming interests in the forfeited property may file petitions for remission with MLARS.

  Background

  Starting at least in or about October 2018, U.S. authorities investigated Reginald Fowler and others for their involvement in a scheme to operate a cryptocurrency payment processing business through bank accounts Fowler opened. In sum, the investigation revealed that Fowler operated Global Trading Solutions LLC, which worked with another company, Crypto Capital Corp., collectively functioning as an unlicensed money transmitter. Fowler and his co-conspirators lied to financial institutions, which allowed the conspirators to open bank accounts that were used to facilitate the unlicensed money transmitting.

  As part of its investigation, the Government seized more than $60 million pursuant to warrants authorizing seizure of bank accounts, and obtained post-indictment restraining orders authorizing restraint of certain other bank accounts. On or about February 20, 2019, Fowler was charged in a five-count indictment with conspiracy to commit bank fraud, bank fraud, conspiracy to operate an unlicensed money transmitting business, operation of an unlicensed money transmitting business, for the crimes described above, and a separate wire fraud, in which Fowler defrauded the Alliance of American Football. He pleaded guilty to all of the counts in the indictment, without the benefit of a plea agreement, on April 25, 2022. In June 2023, the Court sentenced Fowler; as part of his sentence, the Court ordered a Preliminary Order of Forfeiture as

to Specific Property/Money Judgment. Dkt. No. 146. In that Preliminary Order, the Court imposed a Money Judgment of $740,249,140.52, and forfeited the defendant's right, title, and interest in sixty bank accounts. Dkt. No. 146, Ex. A. The bank accounts are in the name of Fowler personally, or companies connected to him or his co-conspirators. The Court also ordered restitution, for $53,189,261.80, to the Alliance of American Football. Dkt. No. 140. No final order of forfeiture has yet issued, as the applicable claims process is still ongoing.

Legal Analysis

1. Standing for Purposes of Forfeiture

A third party can contest forfeiture of a specific property if it meets the standard described in 21 U.S.C. § 853(n)(2). *See United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir. 1997). Section 853(n)(2) provides that any third-party "asserting a legal interest in property which has been ordered forfeited to the United States" may petition the district court "to adjudicate the validity of [its] alleged interest in the property."

There are only two ways that a third-party petitioner can show a valid interest in property subject to criminal forfeiture: the third-party petitioner "must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to the forfeiture,' 21 U.S.C. § 853(n)(6)(A), or (b) be a 'bona fide purchaser for value' of the property who was 'reasonably without cause to believe that the property was subject to forfeiture' at the time of purchase, *id.* § 853(n)(6)(B)." *Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004).

For a third-party petitioner to have standing to proceed with a claim to property subject to forfeiture in an ancillary proceeding, the petitioner must have a valid legal interest in the specific property that will be forfeited to the Government, as opposed to a general claim against the defendant or a general claim against that defendant's assets as a whole. *See Ribadeneira*, 105 F.3d at 835-36 (general creditors have no standing in ancillary proceeding because they have no interest "in" specific forfeited property; section 853(n) requires petitioners to demonstrate "an interest in a *particular, specific asset*, as opposed to a general interest in an entire forfeited estate or account" (emphasis added)); *United States v. Madoff*, 09 Cr. 213 (DC), 2012 WL 1142292, at *4 (S.D.N.Y Apr. 3, 2012) (same) (collecting authorities).

In certain narrow circumstances, a claimant can also have standing if state law authorizes creation of a "constructive trust" over the property. *See, e.g., United States v. Schwimmer*, 968 F.2d 1570, 1581–83 (2d Cir. 1992). Under New York state law, a litigant seeking to impose a constructive trust in an ancillary forfeiture proceeding must establish "(1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer of the subject *res* made in reliance on the promise; (4) unjust enrichment; (5) an inadequate legal remedy; and (6) the tracing of the litigant's property to the assets." *United States v. Vilar*, No. 05-CR-621 (RJS), 2021 WL 4504699, at *4 (S.D.N.Y. Sept. 30, 2021).

Hon. Andrew L. Carter, Jr. Page 3
December 12, 2023

    2. Restitution

Restitution and forfeiture are separate remedies with different purposes. *See United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014) ("While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice."). A criminal defendant is not entitled to have the Government apply forfeited funds to a restitution order. *See United States v. Bodouva*, 853 F.3d 76, 78-79 (2d Cir. 2017) ("Because the statutory schemes authorizing restitution and forfeiture are separate, district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so"). Instead, the Government, at its sole discretion, may decide to forgo forfeiture in favor of restitution. *See Lavin v. United States*, 299 F.3d 123, 127-128 (2d Cir. 2002). Because forfeited assets are property of the Government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations. *See United States v. Trotter*, 912 F.2d 964 (8th Cir. 1990); *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013).

    3. Remission and Restoration

The Attorney General is also vested with statutory authority to "grant petitions for remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice." 21 U.S.C. § 853(i). Once applicable assets have been judicially forfeited, the authority to distribute them to victims, through remission or restoration, rests exclusively with the Attorney General, who has delegated this authority to the Chief of Money Laundering and Asset Recovery Section. *See* 21 U.S.C. § 853(i)(1); 28 C.F.R. §9.1(b)(2).

Remission and restoration are closely related. Remission involves a petition by a victim, who may or may not have a restitution order in a criminal case, directly to the Attorney General (through MLARS), seeking that forfeited funds be used to compensate the victim for losses directly caused either by the crime of conviction, or by a closely related crime. *See* 28 C.F.R. § 9.8. Restoration is a streamlined form of remission, under which a United States Attorney's Office may directly request that the Attorney General (through MLARS) transfer forfeited funds to a court for satisfaction of a criminal restitution order if certain circumstances are met. *See* Department of Justice, Asset Forfeiture Policy Manual 2023 14-6 (explaining restoration).

In either case, the final determination of whether to grant remission or restoration rests with MLARS. Both remission and restoration are governed by the remission regulations, which make them available only where "[a] pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture." 28 C.F.R. § 9.8(b)(1). Status as a victim is determined entirely by the finding of such a loss. 28 C.F.R. § 9.2 ("Victim means a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture."). The determination of remission is unreviewable, and for the Department of Justice alone to make. *See generally United States v. Approximately 1,170 Carats of Rough Diamonds Seized at John F. Kennedy Intern. Airport on January 13, 2004*, No. 05 Civ. 5816 (ARR), 2008 WL 2884387, at *14-15

(E.D.N.Y. July 23, 2008) (in civil forfeiture case, court "is not empowered" to review determination of petition for remission or mitigation); *United States v. One 1970 Buick Riviera Bearing Serial No. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir. 1972) (Attorney General has unreviewable discretion over remission or mitigation of forfeitures).

Discussion

The Government has communicated with multiple parties who have expressed interest in the Government's seizures, including Shift Markets. Neither Shift Markets nor any party the Government has spoken to has a claim over the assets subject to the Preliminary Order of Forfeiture. Those are assets recovered from bank accounts in the name of Fowler or companies controlled by or associated with members of the conspiracy. The Shift Markets Petition is illustrative: none of the accounts in the Preliminary Order are in the name of Shift Markets, and the Petition merely states that "upon information and belief, [funds deposited by Shift Markets with Crypto Capital and Fowler] was deposited into a bank account that was seized by the Government on or before May 28, 2019, and likely sometime in 2018." Shift Markets Petition at 4. The Petition's *ipse dixit* claim that Shift Markets "is the owner of the subject property," *id.* at 7, is inadequate: Shift Markets is at best merely a general creditor of Crypto Capital, whose funds were combined with those of others who used Crypto Capital, and thus Shift Markets lacks the "legal right, title, or interest in the property that was forfeited as required for standing." *DSI Associates LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (citations omitted).[1] The Court should dismiss the Shift Markets Petition, and to the extent the Court receives any other petitions raising similar claims, should dismiss those and order the funds finally forfeited to the Government.

For the avoidance of doubt, upon final forfeiture, the Government intends to seek restoration, whereby MLARS (per the Attorney General's delegation) would transfer the forfeited funds for satisfaction of Fowler's criminal restitution order which he owes to the Alliance of American Football. Parties seeking remission, including Shift Markets, may petition MLARS for pecuniary compensation of losses from forfeited funds. Indeed, that is consistent with the alternate relief which Shift Markets seeks: a "determination that is consistent with 28 C.F.R. §9.1. et seq.," namely "partial relief." Shift Markets Petition at 7.[2]

---

[1] Nor would there be any basis for the Court to impose a constructive trust. Among other flaws, the Petition fails to demonstrate the elements of such a claim, including because Shift Markets has failed to trace the funds they transferred to Crypto Capital, in particular, to the specific property the Government seeks to forfeit. *United States v. PokerStars*, No. 11 CIV. 2564 LBS, 2012 WL 1659177, at *3 (S.D.N.Y. May 9, 2012) (because defendant deposited putative claimants "money into general bank accounts, and did not keep it segregated from other [potential claimants'] accounts . . . [claimant] cannot demonstrate that any of the money seized by the Government is actually his.").

[2] To the extent the Shift Markets Petition seeks to have the Court determine the appropriate remission, that request should be denied. *One 1970 Buick Riviera Bearing Serial No. 494870H910774*, 463 F.2d at 1170 (Attorney General determination is "unreviewable"); *United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013), *aff'd*, 798 F.3d 84 (2d Cir. 2015)

Hon. Andrew L. Carter, Jr.            Page 5
December 12, 2023

The Government is available to answer any questions the Court may have.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   *Samuel Raymond*
Samuel Raymond
Assistant United States Attorney
(212) 637-6519

cc: Counsel (by ECF)

---

("The Second Circuit has held that [the] authority [of the Department of Justice as to resmission] is discretionary").